## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | |
|---|---|
| LAKENYA MCGHEE-TWILLEY, individually, and as next-of-kin to the deceased, MARKTAVIOUS TWILLEY, § § § § *Plaintiff*, § § v. § § CORECIVIC OF TENNESSEE, LLC, § as owner and operator of TROUSDALE § TURNER CORRECTIONAL CENTER, § and MARTIN FRINK, LARODERICK § MCDAVID, DENNIS KAISER, § § *Defendants*. § | Case No. _____<br><br>JURY DEMANDED |

## COMPLAINT

For her Complaint against the Defendants, the Plaintiff states to the Court and the Jury as follows:

## I. INTRODUCTION

1. On March 28, 2022, Marktavious Twilley was brutally stabbed to death by multiple other inmates at Trousdale Turner Correctional Center, the notoriously dangerous and chronically understaffed private prison operated by CoreCivic of Tennessee, LLC ("CoreCivic").

2. At the time of Mr. Twilley's murder, Trousdale Turner Correctional Center was not in compliance with its contractual staffing obligations.

3. At the time of Mr. Twilley's murder, there was just one officer managing all three pods in the building where Mr. Twilley was killed.

4. By the time staff arrived, Mr. Twilley had already been stabbed multiple times, left for dead, and was bleeding out. Shortly thereafter, Mr. Twilley expired and was pronounced dead.

5. CoreCivic—which changed its name from Corrections Corporations of America in 2017 after that name became synonymous with the most insidious aspects of America's private prison industry—is the nation's most notorious private prison operator. To maintain its profit margin—and due to its chronic and profit-motivated deliberate indifference to inmate health and safety—CoreCivic serially underinvests in prison staff, security, and inmate healthcare at its prisons, leading to predictable and horrific results.[1]

6. Trousdale Turner Correctional Center has been plagued by constant

---

[1] *See, e.g.*, Samantha Max, *The NAACP wants a federal investigation into a local prison they say is unsafe and poorly managed*, WPLN NEWS (Nov. 12, 2021), https://wpln.org/post/the-naacp-wants-a-federal-investigation-into-a-local-prison-they-say-is-unsafe-and-poorly-managed/ ("Trousdale Turner is one of four Tennessee prisons managed by CoreCivic, one of the country's largest private correctional companies, which is based in Brentwood. A recent WPLN News analysis found that the four [CoreCivic] facilities had accounted for nearly all homicides within state prisons in the past five years, even though they only house about a third of Tennessee's prisoners. Critics have accused the company of putting profits over safety."); Sam Stockard, *Lawmaker raises specter of federal takeover of Tennessee prison system*, TENNESSEE LOOKOUT (Sept. 27, 2022), https://tennesseelookout.com/2022/09/27/lawmaker-raises-specter-of-federal-takeover-of-tennessee-prison-system/ ("Public reporting of inmate deaths and other serious incidents also raised concerns, with the audit finding management did not ensure state and CoreCivic staff collected and reported complete and accurate information, something it determined to be 'problematic.'"); Jamie Satterfield, *Private prison contractor CoreCivic hit with two new lawsuits over inmate deaths*, TENNESSEE LOOKOUT (Sept. 21, 2022), https://tennesseelookout.com/2022/09/21/private-prison-contractor-corecivic-hit-with-two-new-lawsuits-over-inmate-deaths/ ("The parents of three inmates who died behind bars in a span of just four months in 2021 are accusing [CoreCivic] of repeatedly placing profits over safety and failing to police its own guards."); Samantha Max, *'They're Supposed To Be Protected': A Homicide At A Private Tennessee Prison Raises Questions About Safety*, WPLN NEWS (Apr. 15, 2021), https://wpln.org/post/theyre-supposed-to-be-protected-a-homicide-at-a-private-tennessee-prison-raises-questions-about-safety/ ("[A]fter an audit in 2017, the state fined CoreCivic more than $2 million because its facilities were dangerously short-staffed. Last year, auditors found its prisons were still understaffed."); Chris Gregory, *Staffing remains a problem at Trousdale prison*, LEBANON DEMOCRAT (Oct. 28, 2021), https://www.lebanondemocrat.com/hartsville/staffing-remains-a-problem-at-trousdale-prison/article_977a607e-60a6-581a-a29c-c0b3e10399c6.html ("'In a building where you might have three staff posts, we're generally running with one,' [Warden] Frink said. 'It works that one person a lot harder.'"); *see also* Samantha Max, *Three Indicted In Separate Violent Incidents At A Private Prison In Middle Tennessee*, WPLN NEWS (June 10, 2021), https://wpln.org/post/three-indicted-in-separate-violent-incidents-at-a-private-prison-in-middle-tennessee/ ("CoreCivic, which operates the facility, has been sanctioned by the state comptroller for staffing shortages and unsafe conditions. Its facilities account for more than 80% of prison homicides in Tennessee, though they house just about a third of the state's prisoners.").

problems since its 2016 opening.[2]

7. Due to CoreCivic's chronic and deliberate understaffing, Mr. Twilley's pod was left unsupervised long enough for a large confrontation to develop, in the open, and for Mr. Twilley to be murdered.

8. This lawsuit—filed by Mr. Twilley's grieving mother—seeks an award of damages for Mr. Twilley's wrongful death and for Ms. Twilley's own loss of filial consortium.

## II. PARTIES

9. Plaintiff LaKenya McGhee-Twilley is the mother and next-of-kin to the decedent Marktavious Twilley, who was murdered while incarcerated at Defendant CoreCivic's Trousdale Turner Correctional Center on March 28, 2022. The Plaintiff is a citizen of Tennessee and a resident of Shelby County, Tennessee. Ms. Twilley can be contacted through counsel.

10. Defendant CoreCivic of Tennessee, LLC, is a private prison corporation. CoreCivic owns and operates Trousdale Turner Correctional Center, the private prison where the decedent was housed when he was stabbed to death by other inmates. CoreCivic is a citizen of Tennessee with its principal place of business and corporate headquarters located in Williamson County, Tennessee, at 5501 Virginia Way,

---

[2] *See, e.g.*, Steven Hale, *Tennessee's Largest Prison Still Appears as Troubled as Ever*, NASHVILLE SCENE (Feb.13, 2019), https://www.nashvillescene.com/news/tennessee-s-largest-prison-still-appears-as-troubled-as-ever/article_249ebd95-f20c-59cc-8d97-23ed2dd1aeed.html ("Since it opened in early 2016, Tennessee's largest prison – CoreCivic's Trousdale Turner Correctional Center – has also been one of its most deeply troubled."); HC Editor, *Doing Time in Trousdale is a Death Sentence! Tennesseans Speak Out*, HARD CRACKERS (Jun. 4, 2020), https://hardcrackers.com/time-trousdale-death-sentence-tennesseans-speak/ ("It is barbaric and inhumane is the best way that I know how to explain it. . . . If they were running an animal shelter, they would be hanged in front of the town square."); Adam Tamburin, *'They don't care': After another unexplained death at Trousdale Turner prison, family fights for justice*, THE TENNESSEAN (Mar. 18, 2021), https://www.tennessean.com/story/news/crime/2021/03/19/trousdale-turner-prison-tennessee-reports-another-unexplained-death/6887813002/.

Brentwood, TN, 37027-7680. CoreCivic may be served through its registered agent at CoreCivic of Tennessee, LLC, Registered Agent: C T CORPORATION SYSTEM, 300 MONTVUE RD, KNOXVILLE, TN 37919-5546.

11. Defendant Martin Frink is a citizen of Tennessee who at all times relevant to this Complaint was employed as the warden at Trousdale Turner Correctional Center.

12. Defendant Laroderick McDavid is a citizen of Tennessee who at all times relevant to this Complaint was employed as an assistant shift supervisor at Trousdale Turner Correctional Center.

13. Defendant Dennis Kaiser is a citizen of Tennessee who at all times relevant to this Complaint was employed as a shift supervisor at Trousdale Turner Correctional Center.

### III. JURISDICTION AND VENUE

14. This Court has jurisdiction over the Plaintiff's federal claims in this civil action pursuant to 28 U.S.C. § 1331.

15. This Court has supplemental jurisdiction to adjudicate the Plaintiff's state law claims related to the Plaintiff's federal claims in this action pursuant to 28 U.S.C. § 1367(a).

16. As the judicial district in which one or more Defendants reside, and all Defendants being residents of the State of Tennessee, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1).

17. As the judicial district in which Defendant CoreCivic makes its calculated, profit-motivated decisions to underinvest in staffing in its Tennessee facilities, venue is independently proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as the district in which a substantial part of the events or omissions giving rise to the Plaintiff's claims

occurred.

18. The Plaintiff has authority to maintain her own claims individually and to maintain this wrongful death action as next-of-kin to the deceased pursuant to Tenn. Code Ann. § 20-5-107(a).

## IV. FACTUAL ALLEGATIONS

19. At all times relevant to this Complaint, Marktavious Twilley was an inmate housed at Trousdale Turner Correctional Center—a private, for-profit prison that is owned, managed, and operated by Defendant CoreCivic.

20. On March 28, 2022, at approximately 6:55 p.m., a large confrontation developed and an inmate-on-inmate fight broke out in Mr. Twilley's pod, Unit B-A, in the dayroom. *See* Ex. 1 at 3. The confrontation reportedly arose over a cell phone.

21. Gathering in groups or crowds on the upper level of a pod is prohibited by policy due to the safety risk that it creates for other inmates and correctional staff.

22. However, on March 28, 2022, a group of inmates initially gathered on the upper level of the pod—with no intervention by correctional staff, who were not present at the time in contravention of policy and contract obligations—before approaching and attacking Mr. Twilley on the main floor.

23. When staff responded to the call of a fight "and began locking the pod down[,]" the "Assistant Shift Supervisor Laroderick McDavid discovered [Mr. Twilley] in cell 118 laying on the floor with stab wounds." *See* Ex. 1 at 3; *see also* Ex. 2 at 2.

24. While a crowd of inmates gathered around the cell door, medical staff responded. Ex. 2 at 11.

25. By the time staff arrived, Mr. Twilley had an "obvious laceration to [the] right side of [his] chest"; he "showed signs of shortness of breath"; he was provided

- 5 -
Case 3:23-cv-00077   Document 1   Filed 01/25/23   Page 5 of 15 PageID #: 5

oxygen via an "ambu bag[;]" and he had a "weak pulse[.]" Ex. 2 at 95.

26. The laceration was bleeding profusely, and Mr. Twilley was laying in "a pool of blood" when staff arrived. Ex. 2 at 96.

27. In light of Mr. Twilley's serious medical concerns, he was "assisted to [a] stretcher" and rushed to the medical department. *See* Ex. 2 at 95; *see also id.* at 11.

28. Medical staff "attempted to get vital signs with no success." Ex. 2 at 95–96. An IV was started to Mr. Twilley's right arm. Ex. 2 at 95-97.

29. Soon thereafter, Mr. Twilley "stopped breathing and lost his pulse." Ex. 2 at 96.

30. At 7:19 p.m., medical staff began administering CPR. Ex. 2 at 95–96.

31. At approximately 7:20 p.m., EMS arrived and took over Mr. Twilley's care. Ex. 2 at 95–96.

32. At 7:40 p.m., EMS transported Mr. Twilley from Trousdale Turner Correctional Center to Trousdale Medical Center. Ex. 2 at 13.

33. Twenty-three minutes after leaving Trousdale Turner Correctional Center, Mr. Twilley was pronounced deceased at the hospital at 8:03 p.m. Ex. 2 at 13.

34. During investigation of the incident, an "[eleven-inch] sharpened piece of bunk material with [a] cloth handle" was discovered and determined to be the weapon used to stab Mr. Twilley in the chest. Ex. 2 at 14.

35. Mr. Twilley's pod was known by CoreCivic to be saturated with dangerous, home-made weapons.

36. Approximately sixty home-made weapons that could be used to stab another inmate to death had been found in Mr. Twilley's pod the week before his murder.

37. Mr. Twilley's death was—and it was determined to be—a homicide. *See* Ex.

2 at 13.

38. Despite both Shift Supervisor Kaiser and Assistant Shift Supervisor McDavid being on duty that day, the inmate fight was able to escalate to the point of murder before any staff responded. That escalation was permitted to occur without intervention, because Mr. Twilley's pod and the building in which he was housed were severely understaffed at the time, and all of the Defendants knew it but failed to remedy the dangerous condition created by it.

39. That escalation was able to transpire without staff intervention because only a single staff member was tasked with overseeing three separate pods at the time of Mr. Twilley's murder.

40. Such understaffing contravened CoreCivic's contractual staffing obligations, which required at least six staff members to oversee the three pods in Mr. Twilley's building at the time of his murder.

41. All individual defendants were aware of the heightened risk of understaffing-enabled inmate-on-inmate violence in Mr. Twilley's pod at the time of Mr. Twilley's murder.

42. All individual defendants knew or should have known that when pods were not properly staffed and supervised, the risk of violence and preventable death substantially increased.

43. None of the individual defendants took steps to remedy the understaffing conditions or prevent the resulting violence from occurring on March 28, 2022, in Unit B-A.

44. Defendant Frink, as Trousdale Turner Correctional Center's warden, was aware of the many and often fatal problems that chronic understaffing at Trousdale

Turner Correctional Center caused on a routine basis.

45. Defendant Frink, as Trousdale Turner Correctional Center's warden, was aware that Trousdale Turner Correctional Center was understaffed at the time of Mr. Twilley's death.

46. Defendant Frink, as Trousdale Turner Correctional Center's warden, was aware that Trousdale Turner Correctional Center had "never" been fully staffed in compliance with contractual staffing requirements at the time of Mr. Twilley's death.

47. Because CoreCivic has continued to turn a blind eye to the problem of understaffing-created violence in CoreCivic facilities generally and at Trousdale Turner Correctional Center, specifically, the extreme and outsized degree of violence and preventable death continues unabated.[3]

## V. CAUSES OF ACTION

<u>Claim #1: 42 U.S.C. § 1983–Defendants' Failure to Protect Mr. Twilley from Inmate-on-Inmate Violence
(Defendants Frink, McDavid, Kaiser)</u>

48. The Plaintiff incorporates and realleges the foregoing allegations as if fully set forth herein.

49. At all times relevant to this Complaint, the Defendants had legal duties under the Eighth and Fourteenth Amendments to protect Mr. Twilley from violence at the hands of other prisoners and to ensure his reasonable safety while exercising the traditional state function of imprisoning inmates.

50. Because Defendant CoreCivic performs a traditional state function while

---

[3] *See, e.g.*, Sydney Keller, *Fight breaks out among four inmates at Trousdale prison, two hospitalized*, WZTV Nashville (Dec. 9, 2022), https://fox17.com/news/local/fight-breaks-out-among-four-inmates-at-trousdale-correctional-facility-prison-two-hospitalized-hartsville-tn-middle-tennessee-nashville-area-crime-alert-local-news.

operating a state prison, at all times relevant to this Complaint, Defendant CoreCivic and all other Defendants in this action acted under the color of state law.

51. An inmate's Eighth Amendment claim based upon deliberate indifference to inmate safety is "akin to recklessness," and it carries both objective and subjective components.

52. Unlike the State of Tennessee, Defendant CoreCivic is not entitled to Eleventh Amendment immunity and may be held liable under § 1983 if its official policies or customs resulted in the Plaintiffs' injuries.

53. The individual defendants failed to protect Mr. Twilley from violence at the hands of other prisoners.

54. The individual defendants failed to ensure Mr. Twilley's reasonable safety at the time he was murdered.

55. The individual Defendants knew that Mr. Twilley faced a substantial risk of serious harm based on the rampant inmate-on-inmate violence at Trousdale Turner Correctional Center and the extraordinary volume of deadly weapons that were located in his pod, but they disregarded those risks and failed to take reasonable measures to abate them.

56. At the time Mr. Twilley was murdered, before it, and still today, inmates at Trousdale Turner Correctional Center who were caught with deadly weapons frequently were and are not written up for them.

57. At the time Mr. Twilley was murdered, the pervasive risk of harm to inmates at his facility manifested in actual harm and constant inmate-on-inmate attacks, only a fraction of which are officially documented.

58. At the time Mr. Twilley was murdered, each individual Defendant had been

- 9 -
Case 3:23-cv-00077   Document 1   Filed 01/25/23   Page 9 of 15 PageID #: 9

exposed to information concerning the risk of physical harm to inmates housed at Trousdale Turner Correctional Center arising from inmate-on-inmate violence, and they must have known about it.

59. Defendant CoreCivic has an unconstitutional policy or practice of maintaining chronically inadequate staffing levels, which leaves inmates such as Mr. Twilley exposed to serious risks of violence that are known to prison officials at CoreCivic's facilities, including Trousdale Turner Correctional Center.

60. Each individual Defendant was specifically aware of and on notice of the heightened number of assaults at Trousdale Turner Correctional Center resulting from understaffing; the danger of deadly incidents in Mr. Twilley's specific pod; and the fact that Mr. Twilley's pod was understaffed, both at the time of his murder and chronically.

61. Each individual Defendant was specifically aware of and on notice of Trousdale Turner Correctional Center's documented problem of failing to protect inmates from assault by other inmates—information known both internally and reported publicly over the course of multiple widely reported public audits.

62. Defendant Frink—as the warden of Trousdale Turner Correctional Center at the time of Mr. Twilley's death—was aware of and participated in implementing Defendant CoreCivic's policies and practices of chronically understaffing its facilities.

63. The Defendants consciously neglected to remedy Trousdale Turner Correctional Center's chronic understaffing despite their personal knowledge of the prevalence of violence that plagues the facility and the heightened danger to inmates that such understaffing causes.

64. As a result of the Defendants' deliberate indifference to Mr. Twilley's safety, their failure to protect Mr. Twilley from understaffing-enabled violence at the hands of

other prisoners, and their failure to ensure Mr. Twilley's reasonable safety, Mr. Twilley was murdered.

CLAIM #2: LIABILITY UNDER *MONELL V. DEPT. OF SOCIAL SERVICES*, 436 U.S. 658 (1978)
(AS TO DEFENDANT CORECIVIC)

65. The Plaintiff incorporates and realleges the foregoing allegations as if fully set forth herein.

66. Defendant CoreCivic has adopted a policy, practice, and custom of severely understaffing its facilities, including Trousdale Turner Correctional Center, without regard to inmate safety because understaffing is more profitable.

67. Although not formally approved, this unconstitutional policy, practice, and custom of severely understaffing its facilities, including Trousdale Turner Correctional Center, is so widespread as to have the force of law.

68. Each of the individual Defendants had knowledge of and acquiesced in this established practice.

69. CoreCivic's custom of severe, chronic understaffing at Trousdale Turner Correctional Center is so permanent and well-settled as to constitute a custom or usage with the force of law and is deeply embedded in Trousdale Turner Correctional Center's daily functioning.

70. Defendant CoreCivic's custom of severe, chronic unconstitutional understaffing at Trousdale Turner Correctional Center was ratified by Defendant Frink in his capacity as warden.

71. CoreCivic's custom of tolerance or acquiescence of understaffing violations is so thoroughly documented and widespread that understaffing violations and CoreCivic are practically synonymous.

72. As a result of multiple audits identifying CoreCivic's severe understaffing issues and thousands of violent incidents—both reported and unreported—at the facility over a period of years, CoreCivic had actual knowledge of Trousdale Turner Correctional Center's chronic understaffing problems, but it has opted not to staff Trousdale Turner Correctional Center adequately because doing so would be less profitable.

73. At the time of Mr. Twilley's murder, CoreCivic's employees—including Defendant Frink, CoreCivic's on-site policymaker—had actual knowledge that Trousdale Turner Correctional Center's chronic understaffing problems resulted in an extraordinary and outsized level of inmate-on-inmate violence at the facility.

74. CoreCivic's policy and practice of unconstitutional understaffing is widespread, rampant, and endemic to CoreCivic's prison facilities, including Trousdale Turner Correctional Center.

75. The Defendants knew of the heightened and chronic safety risks to inmates resulting from understaffing at Trousdale Turner Correctional Center, but they tolerated, maintained, and promoted understaffing to generate greater profits for CoreCivic at the expense of the safety of inmates like Mr. Twilley.

76. Mr. Twilley's death is attributable to Defendant CoreCivic's policy, practice, and custom of failing to ensure an adequate, constitutional, or contractually-compliant level of staffing at Trousdale Turner Correctional Center. This policy, practice, and custom was explicitly or impliedly authorized by Defendant CoreCivic, and Defendant Frink ratified and knowingly acquiesced in it.

77. If Mr. Twilley's pod had been properly staff on the day of his murder, the Mr. Twilley would not be dead.

78. Instead, because Trousdale Turner Correctional Center was chronically

understaffed, including at the time of Mr. Twilley's murder, and Mr. Twilley was the victim of a preventable murder.

79. CoreCivic's custom of severe, chronic, unconstitutional understaffing was the moving force behind Mr. Twilley's death.

80. Trousdale Turner Correctional Center's chronic understaffing continued and continues to remain unremedied even after Mr. Twilley's death.

CLAIM #3: NEGLIGENCE

81. The Plaintiff incorporates and realleges the foregoing allegations as if fully set forth herein.

82. Defendants CoreCivic, Frink, McDavid, and Kaiser owed a legal duty of care to Mr. Twilley to protect him from reasonably foreseeable harm.

83. Because these Defendants knew that CoreCivic has a policy of preventing inmates from gathering on the upper level of pods specifically due to the safety risk it creates, when a crowd gathered there in Mr. Twilley's pod on March 28, 2022, the Defendants knew or had reason to anticipate that Mr. Twilley would become the target of a violent attack by these other inmates.

84. Defendants had actual and constructive notice of the specific risk of foreseeable harm that Mr. Twilley faced due to a large crowd of inmates gathering in his pod in an area they are prohibited from gathering in due to the violence and unrest that commonly follows such gatherings.

85. The Defendants knew or should have known that Mr. Twilley would become the victim of a violent attack, but they failed to use reasonable care to prevent it and instead perpetuated a policy of understaffing and resultant inadequate monitoring that had been repeatedly proven to undercut their duty of care, often with fatal consequences.

86. Defendants' breaches of their duty of care to Mr. Twilley proximately caused Mr. Twilley to die from foreseeable and preventable violence at the hands of other inmates.

87. The Defendants' breach of their duty of care to Mr. Twilley both actually and proximately caused Mr. Twilley's death.

CLAIM #4: LOSS OF CONSORTIUM

88. The Plaintiff incorporates and realleges the foregoing allegations as if fully set forth herein.

89. Tennessee allows for an award of filial consortium and other damages for the death of one's child under Tenn. Code Ann. § 20–5–113. *See Hancock v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 54 S.W.3d 234, 236 (Tenn. 2001).

90. The Defendants' wrongful acts, faults, omissions, and tortious misconduct caused the Plaintiff to suffer filial consortium and other damages arising from the death of her beloved son.

91. Accordingly, the Plaintiff is entitled to an award of damages including the pecuniary value of Mr. Twilley's life and the loss of her son's attention, guidance, care, protection, companionship, cooperation, affection, and love.

## VI.  PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for the following relief:

1. That proper process issue and be served upon the Defendants, and that the Defendants be required to appear and answer this Complaint within the time required by law;

2. That Plaintiff be awarded all compensatory, consequential, and incidental damages to which Plaintiff is entitled in an amount not less than $1 million;

3. That Plaintiff be awarded punitive damages in an amount not less than $3 million;

4. That Plaintiff be awarded her reasonable attorney's fees pursuant to 42 U.S.C. § 1988(b);

5. That a jury of 12 be empaneled to try this cause;

6. That pre-judgment and post-judgment interest be awarded to the Plaintiff;

7. That the Plaintiff be awarded all further relief to which she is entitled.

Respectfully submitted,

By: /s/ Daniel A. Horwitz_____
DANIEL A. HORWITZ, BPR #032176
LINDSAY SMITH, BPR #035937
MELISSA K. DIX, BPR #038535
HORWITZ LAW, PLLC
4016 WESTLAWN DR.
NASHVILLE, TN 37209
daniel@horwitz.law
lindsay@horwitz.law
melissa@horwitz.law
(615) 739-2888

*Counsel for Plaintiff*