# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# AT NASHVILLE

| | | |
|---|---|---|
| LAKENYA MCGHEE-TWILLEY, individually, and as next-of-kin to the deceased, MARKTAVIOUS TWILLEY, § § § § | | |
| *Plaintiff*, § | | |
| v. § | Case 3:23-cv-00077 | |
| § | | |
| CORECIVIC OF TENNESSEE, LLC, § as owner and operator of TROUSDALE § TURNER CORRECTIONAL CENTER, § and MARTIN FRINK, LARODERICK § MCDAVID, DENNIS KAISER, § § | JURY DEMANDED | |
| *Defendants.* § | | |

## PLAINTIFF'S MOTION TO HOLD THE TENNESSEE DEPARTMENT OF CORRECTION IN CONTEMPT

Comes now the Plaintiff, through counsel, and pursuant to Fed. R. Civ. P. 45(g), respectfully moves this Court to hold the Tennessee Department of Correction in contempt for its willful, bad-faith non-compliance with the Plaintiff's subpoena to produce documents. As grounds for this Motion, the Plaintiff respectfully states as follows:

1. On July 12, 2023, the Plaintiff issued and then served on the TDOC a subpoena to produce "[a]ll records possessed by the TDOC related to the death of inmate Marktavious Twilley (00528772), including, without limitation," five specified categories of documents. *See* **Ex. 1**. A copy of the Plaintiff's subpoena is attached as **Ex. 1**.

2. On July 26, 2023, the TDOC propounded written objections objecting to producing any of the documents in its possession that were responsive to the Plaintiff's

subpoena. The TDOC's objections are attached as **Ex. 2**.

3. In the Plaintiff's view, the TDOC's wholesale and largely boilerplate objections lacked any plausible merit, and the Plaintiff communicated her position on the matter to the TDOC immediately. *See* **Ex. 3**. Accordingly, a discovery dispute commenced, and the Plaintiff began the process of attempting to confer before bringing the dispute to the attention of the Court.

4. On September 15, 2023, Magistrate Judge Holmes issued the order set forth at Docket No. 18. As relevant to this Motion, the order stated as follows:

> The Court has reviewed the cases cited in the Attorney General's letter objecting to production of the criminal investigative file. (Docket No. 17-3.) Those cases do not, however, support the contention that such information is not discoverable by Plaintiff. Rather, those cases discuss the restriction on **public access** to such information pending final disposition of the criminal charges. Here, the Court can require production of the information subject to a protective order, including for attorneys' eyes only, or otherwise impose restrictions to protect the integrity of the criminal prosecution.

Doc. 18 at 5.

5. The Plaintiff promptly transmitted Magistrate Judge Holmes' order to the TDOC in the hopes that it would simplify and resolve the TDOC's objections to the Plaintiff's subpoena by allowing the TDOC to produce responsive documents under a protective order. *See* **Ex. 4** at 8. An in-person meet-and-confer to address the TDOC's (and, at that time, another non-party's) objections was nonetheless scheduled, initially, for October 11, 2023 at 1:00 p.m. at the Attorney General's Office. *See id.* at 5–7.

6. Before the in-person meet-and-confer discovery dispute conference took place, the TDOC agreed to produce the documents responsive to the Plaintiff's subpoena subject to a protective order, and it agreed in writing to withdraw its objections to the Plaintiff's subpoena. *See id.* at 1–3. Accordingly, the dispute having been resolved, the

Parties' scheduled meet-and-confer was canceled by the TDOC. *Id.* at 1. Given the Plaintiff's distrust of the TDOC and its counsel, the Plaintiff also made certain to confirm without ambiguity that the TDOC was agreeing to withdraw its objections and to comply with the Plaintiff's subpoena upon entry of a protective order before the meet-and-confer was canceled. For the Court's review, the Parties' correspondence on the matter, verbatim, was as follows:

_____

**[TDOC Counsel]:**

> Good Afternoon,
>
> After speaking with my client, TDOC is agreeable to enter into a protective order. Please confirm that the meeting should be cancelled.
>
> Thank you!

_____

**[Plaintiff's Counsel]:**

> To clarify, the question is whether the TDOC will provide the subpoenaed documents pursuant to a protective order, not whether the TDOC is generally agreeable to one. *If the TDOC will withdraw its objections and provide the documents, though, then yes, there is no reason to meet tomorrow.*

_____

**[TDOC Counsel]:**

> *Yes, TDOC will provide the subpoenaed documents pursuant to a protective order.* I apologize – I should have been more specific.
>
> We will cancel the meeting.

_____

*Id.* at 1–3 (emphases added).

7. On November 28, 2023, the Court entered an order requiring the parties and third-parties to bring any then-existing discovery disputes "to the Court's attention

- 3 -
Case 3:23-cv-00077     Document 36     Filed 12/29/23     Page 3 of 13 PageID #: 4494

by the filing of a joint motion for a discovery conference and compliant joint discovery dispute statement by no later than **December 13, 202[3]**."[1] *See* Doc. 27 at 2. Because the TDOC had agreed, in writing, to withdraw its objections and stated that it "will provide the subpoenaed documents pursuant to a protective order[,]" *see* **Ex. 4** at 1, the Plaintiff had no further discovery dispute with the TDOC. Thus, no dispute was brought to the Court's attention by the Court's December 13, 2023 deadline.

      8.      On December 12, 2023, the Court entered an Agreed Protective Order. *See* Doc. 31. As a result, the Plaintiff expected to receive the outstanding subpoenaed documents from the TDOC and demanded them accordingly. *See* **Ex. 5** at 1. Because the protective order that was entered differed slightly from the version that had been agreed upon by the Parties, though, on December 20, 2023, the TDOC, through counsel, did not then produce the outstanding documents and later responded as follows:

_____

Daniel,

As soon as the recently-filed amended order is signed, we will produce the remaining documents in our possession.

Thank you.

Toni-Ann M. Dolan

_____

*Id.*

      9.      On December 21, 2023, the Court entered a Revised Agreed Protective Order. *See* Doc. 34. Because the TDOC had agreed in writing to "provide the subpoenaed

---

[1] The order says "December 13, 2024," but it is clear from the context that it meant 2023, as all "as-of-yet-unidentified discovery disputes" were to "brought promptly to the Court's attention and by no later than April 5, 2024[.]" *See* Doc. 27 at 2.

documents pursuant to a protective order[,]" *see* **Ex. 4** at 1, and because the TDOC had reaffirmed the day before that "[a]s soon as the recently-filed amended order is signed, we will produce the remaining documents in our possession[,]" *see* **Ex. 5** at 1, the Plaintiff finally anticipated receiving from the TDOC the long-outstanding responsive documents that she had subpoenaed more than five months earlier.

10. The same day the Court's Revised Agreed Protective Order issued, the Plaintiff transmitted it to the TDOC's counsel and demanded prompt compliance with her subpoena. *See* **Ex. 6** at 1. The TDOC did not respond. Accordingly, on December 22, 2023, the Plaintiff followed up again to demand production by no later than December 27, 2023 at 12:00 p.m. *Id.* The TDOC, through counsel, then responded that: "TDOC is in the process of marking the documents in our possession. We will send you a link by your designated deadline to access same." *Id.*

11. On December 27, 2023, the TDOC transmitted a document production to the Plaintiff. *See* **Ex. 7** at 2–3. The TDOC's full production in response to the Plaintiff's subpoena is available at **Ex. 8** (Non-Confidential TDOC Production Bates Numbered 63–97 and 2128–32) and Docs. 35- 2–6 (Marked Confidential TDOC Production).

12. The Plaintiff's review of the TDOC's document production revealed that a vast number of responsive documents—including all documents responsive to three entire categories of the Plaintiff's subpoena—had been withheld by the TDOC.

13. *First*, the TDOC did not produce any documents responsive to category #1 of the Plaintiff's subpoena, which sought: "All video footage related to Mr. Twilley's death[.]" *See* **Ex. 1** at 1.

14. *Second*, the TDOC did not produce the "records possessed by the TDOC related to the death of inmate Marktavious Twilley (00528772), including, without

- 5 -

limitation . . . 2. All correspondence and incident reports received from CoreCivic regarding Mr. Twilley's death[.]" *See* **Ex. 1** at 1.  This deficiency was also particularly problematic because highly relevant *TDOC-generated* documents were produced by a different party (District Attorney Lawson) in response to a different subpoena the Plaintiff issued in this case, just one example of which is available for the Court's review at Doc. 35-1.  The nature of those documents makes clear that the TDOC conducted an in-depth investigation into Mr. Twilley's death and generated powerfully relevant documents as part of that investigation. *See id.* (relevant document created by the "State of Tennessee Department of Correction Office of Investigations").  As a result, it is clear that the TDOC has abundant records in its possession that relate directly "to the death of inmate Marktavious Twilley (00528772)" (**Ex. 1** at 1), but it produced none of them in response to the Plaintiff's subpoena, and it did not produce anything that CoreCivic sent to the TDOC regarding Mr. Twilley's death, either.

15. <u>Third</u>, the TDOC did not produce any documents responsive to category #5 of the Plaintiff's subpoena, which sought: "All recordings or transcripts of testimony by TDOC officials, whether given during a lawsuit or during legislative hearings, concerning contract non-compliance, understaffing, or prison conditions at Trousdale Turner Correctional Center from March 2018 until the present time." *See* **Ex. 1** at 1.

16. The Plaintiff promptly confronted the TDOC about these glaring deficiencies in its document production the same day that the deficient production was furnished, and the Plaintiff demanded an explanation for the deficiencies by no later than December 29, 2023. *See* **Ex. 9** at 1–2.

17. On December 29, 2023, the TDOC communicated its explanation as follows:

> Good Morning Daniel,
>
> As set forth in our July 26, 2023 letter, with respect to Request Nos. 1 and 2, the documents and information sought are most easily obtained through party discovery. With respect to Request No. 5, TDOC has reviewed its files and there are no responsive documents in its possession. TDOC maintains the position that it has adequately and fully responded to the Subpoena and has produced over 2,500 documents.

*See id.* at 1.

18. In other words, after: (a) waiving its earlier objections in writing and then canceling a scheduled discovery dispute conference based on that waiver, *see* **Ex. 4** at 1–3; (b) causing the Plaintiff to avoid bringing a discovery dispute to the Court's attention by the Court's stated deadline as a result of that written waiver, *see* Doc. 27 at 2; and (c) communicating as recently as the previous week that "[a]s soon as the recently-filed amended order is signed, we will produce the remaining documents in our possession[,]" *see* **Ex. 5** at 1, the TDOC intentionally withheld all documents responsive to category #1 and #2 of the Plaintiff's subpoena based on objections that it had withdrawn, in writing, several months earlier.

19. Separately, as to category #5 of the Plaintiff's subpoena (governing "All recordings or transcripts of testimony by TDOC officials, whether given during a lawsuit or during legislative hearings, concerning contract non-compliance, understaffing, or prison conditions at Trousdale Turner Correctional Center from March 2018 until the present time[,]" *see* **Ex. 1** at 1), the TDOC's representation that the it "reviewed its files and there are no responsive documents in its possession" (**Ex. 9** at 1) is demonstrably untruthful.

20.     TDOC officials have on several occasions testified about contract non-compliance, understaffing, or prison conditions at Trousdale Turner Correctional Center, including in recent litigation to which the TDOC was a party.  For example, in just *one* recent case concerning conditions at Trousdale Turner Correctional Center, the TDOC's Commissioner testified in a responsive deposition (**Ex. 10**); the TDOC's designated 30.02(6) witness testified in a responsive deposition (**Ex. 11**); and both of the TDOC's contract monitors at Trousdale Turner Correctional Center testified in responsive depositions (**Ex. 12** and **Ex. 13**).  TDOC officials have also testified repeatedly about contract non-compliance and conditions at Trousdale Turner Correctional Center in legislative hearings, *see, e.g.,* **Ex. 14** (Sep. 26, 2022 Hearing), including as recently as two weeks ago.  *See* Rose Gilbert, *State lawmakers 'disturbed' by findings that the Department of Corrections failed to appropriately prevent and investigate sexual assault*, WPLN (Dec. 15, 2023), https://wpln.org/post/state-lawmakers-disturbed-by-findings-that-the-department-of-corrections-failed-to-appropriately-prevent-and-investigate-sexual-assault/ (**Ex. 15**).  The Plaintiff only happens to have some number of documents in her possession that are responsive to category #5 of her subpoena already—which represent a tiny fraction of the universe of responsive materials—because her counsel has litigated similar cases before and acquired the documents in other litigation from non-TDOC sources.

21.     Under these circumstances, the TDOC's claim that it "has reviewed its files and there are no responsive documents in its possession" regarding category #5 of the Plaintiff's subpoena is not believable.  *See* **Ex. 8**.  The TDOC plainly has responsive documents in its possession.  *See, e.g.,* **Exs. 10–13.**  Its original objection also asserted that producing the documents in its possession that were responsive to category #5 of the

Plaintiff's subpoena would be "unduly burdensome," *see* **Ex. 2** at 3—a position that cannot be reconciled with its newest representation that it lacks any responsive documents at all. *Compare id., with* **Ex. 8.** Thus, when the TDOC now claims—for the first time and against a mountain of contrary evidence—that it does not possess any "recordings or transcripts of testimony by TDOC officials, whether given during a lawsuit or during legislative hearings, concerning contract non-compliance, understaffing, or prison conditions at Trousdale Turner Correctional Center from March 2018 until the present time[,]" *see* **Ex. 1** at 1; **Ex. 8** at 1, it is clear that the TDOC is not just mistaken; it is *lying*.

22. Regrettably, this is not the first time that the TDOC has made "blatant factual misrepresentations" during litigation before this Court, and it has been warned that there may be "repercussions" for doing so again. *See, e.g., Friedmann v. Parker*, 573 F. Supp. 3d 1221, 1226, n.2 (M.D. Tenn. 2021) ("In the Answer to the Complaint, Defendants deny that two cells are "known or referred to as … 'iron man' cells," that "Unit 1 has 'iron man' cells," and that Mr. Friedmann's "cell is an 'iron man' cell." (Doc. No. 16 ¶¶ 18, 41). This is remarkable given Defendants' own exhibits contain a TDOC report signed by multiple Defendants that describes Mr. Friedmann's cell as "an iron man cell." (Doc. No. 15-4 at 15). The Court resolves "disputed" facts in Mr. Friedmann's favor where the record contradicts Defendants' denials. **The Court warns Defendants there may be repercussions for future blatant factual misrepresentations presented to it.**") (citing Fed. R. Civ. P. 11) (emphasis added); *see also* Josh Keefe and Melissa Brown, *Tennessee executed two inmates by lethal injection since 2018. It didn't follow its own rules in either one*, THE TENNESSEAN (May 25, 2022), https://www.tennessean.com/story/news/investigations/2022/05/26/tennessee-

- 9 -
Case 3:23-cv-00077    Document 36    Filed 12/29/23    Page 9 of 13 PageID #: 4500

death-row-lethal-injection-protocol-problems-independent-review-gov-bill-lee/9806784002/ ("after withdrawing key defense documents on May 6, just days after Lee's announcement, Tennessee Attorney General Herbert Slatery informed the court the state 'will correct any inaccuracies and misstatements once the truth has been ascertained.'").

23. The Tennessee Attorney General's Office, which represents the TDOC here, and its clients also have recurring problems respecting court orders, particularly in cases involving the Plaintiff's counsel. *See, e.g., Tennesseans for Sensible Election Laws v. Tennessee Bureau of Ethics & Campaign Finance*, No. M2018-01967-COA-R3-CV, 2019 WL 6770481, at *8 (Tenn. Ct. App. Dec. 12, 2019) ("The trial court found that the State 'inexplicably failed to comply' with its order, and we agree."); *see also* Mariah Timms, *Tennessee election registry in contempt of court, ordered to pay back thousands in fees*, THE TENNESSEAN (Apr. 19, 2022), https://www.tennessean.com/story/news/politics/2022/04/19/tennessee-election-registry-pac-registration-fees-refunds/7361360001/ (**Ex. 16**); Mariah Timms, *TBI violated court order by refusing to expunge records, Tennessee Supreme Court found*, THE TENNESSEAN (Jun. 2, 2022), https://www.tennessean.com/story/news/crime/2022/06/02/tennessee-bureau-investigation-tbi-tn-violated-court-order-expungement/9987303002/ (**Ex. 17**).

24. Under these circumstances—where the TDOC withdrew its objections in writing; willfully refused compliance based on those withdrawn objections anyway after the discovery dispute deadline expired; and made blatant factual misrepresentations about not having any responsive documents in its possession—the appropriate remedy is

contempt.[2]  *See* Fed. R. Civ. P. 45(g) ("The court for the district where compliance is required . . . may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.").

25. The TDOC has been served with the Plaintiff's subpoena.

26. The TDOC has failed, without adequate excuse, to obey the Plaintiff's subpoena even after repeatedly stating in writing that it would do so.

27. The TDOC is knowingly and willfully refusing to comply with the clear, specific, and unambiguous terms of the Plaintiff's subpoena based on: (1) objections that it withdrew months beforehand; and (2) a knowingly false claim that it does not possess documents that are responsive to category #5 of the Plaintiff's subpoena.

28. Accordingly, the Plaintiff moves this Court to hold the TDOC in civil contempt pending compliance with the Plaintiff's subpoena. The Court should also award the Plaintiff her reasonable attorney's fees associated with litigating this motion "in an amount to be determined after Plaintiff[] file[s] appropriate documentation of [her] fees and costs." *Cf. Henrick v. Mealor*, No. 3:18-CV-00621, 2019 WL 13197714, at *2 (M.D. Tenn. Apr. 18, 2019).

29. Given the TDOC's willful and bad-faith disobedience of this Court's lawful process and command—including by both: (1) agreeing to comply with the Plaintiff's subpoena and withdrawing its objections in writing, only to reassert them after the deadline to raise a discovery dispute expired; and (2) lying about whether it has

---

[2] Fed. R. Civ. P. 45(d)(2)(B)(i) permits a motion for compliance when objections have been served. Here, though, where objections were served and then withdrawn alongside a producing party's promise to comply, *see* **Ex. 4** at 1–3, there are no objections for the court to adjudicate. Thus, the only remedy available here is to enforce the subpoena with which the TDOC is refusing to comply.

documents responsive to the Plaintiff's subpoena in its possession—the TDOC should also be held in criminal contempt and fined $50.00 for each document that has been wrongfully withheld. *See* 18 U.S.C. § 401(3) ("A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as-- . . . (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."); Fed. R. Civ. P. 45(g).

Respectfully submitted,

/s/ Daniel A. Horwitz
Daniel A. Horwitz, BPR #032176
Lindsay Smith, BPR #035937
Melissa Dix, BPR #038535
HORWITZ LAW, PLLC
4016 Westlawn Dr.
Nashville, TN 37209
daniel@horwitz.law
lindsay@horwitz.law
melissa@horwitz.law
(615) 739-2888

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of December, 2023, a copy of the foregoing and all exhibits and attachments were sent via CM/ECF, or via email, to:

Joe Welborn
Erin Palmer Polly
Terrence M. McKelvey
222 Second Avenue, South
Suite 1700
Nashville, Tennessee 37201
Joe.Welborn@klgates.com
Erin.Polly@klgates.com
terrence.mckelvey@klgates.com

*Counsel for Defendants*


Toni-Ann M. Dolan | Assistant Attorney General
Office of the Tennessee Attorney General
Law Enforcement and Special Prosecutions Division
P.O. Box 20207
Nashville, TN 37202-0207
p. 615.741.6739
toni-ann.dolan@ag.tn.gov

*Attorney for the Tennessee Department of Correction*