IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| LAKENYA McGHEE-TWILLEY individually ) <br> and as next-of-kin to the deceased, ) <br> Marktavious Twilley ) <br> ) <br> v. ) <br> ) <br> ) <br> CORECIVIC OF TENNESSEE, LLC *et al.* ) | Case No. 3:23-cv-00077 <br> Judge Campbell <br> Magistrate Judge Holmes |

**ORDER**

Presently pending before the Court is Plaintiff's motion for contempt (Docket No. 36), which requests that the Court hold non-party Tennessee Department of Corrections ("TDOC") in contempt pursuant to Rule 45(g) of the Federal Rules of Civil Procedure for TDOC's alleged noncompliance with a previously issued subpoena to produce documents. TDOC responded in opposition (Docket No. 42)[1] and Plaintiff replied in support (Docket No. 45). For the reasons discussed below, Plaintiff's motion (Docket No. 36) is **DENIED**.

**I. BACKGROUND**

In this action, Plaintiff sued Defendants, CoreCivic of Tennessee and various CoreCivic of Tennessee employees ("Defendants"), alleging that the Defendants failed to protect Trousdale Turner Correctional Center Inmate Marktavious Twilley in violation of his constitutional rights and that Defendants acted negligently. (Docket No. 1.)

---

[1] TDOC filed a motion to late-file exhibits to its response in opposition to Plaintiff's motion for contempt. (Motion, Docket No. 43; Late-Filed Exhibits, Docket No. 44-1.). The Court granted the motion but allowed Plaintiff an opportunity to file a supplemental reply stating (i) whether the Court may properly consider the late-filed exhibits and (ii) if so, the impact of the late-filed exhibits, if any, on Plaintiffs' arguments as already stated in its reply. (Docket No. 48.) Plaintiff filed a supplemental reply stating she had no objection to the Court considering the late-filed exhibits and that the late-filed exhibits had no impact on her arguments. (Docket No. 49.) The Court will therefore consider the late-filed exhibits.

On or about July 12, 2023, Plaintiff issued a subpoena to non-party TDOC, primarily seeking information provided to it by Defendant CoreCivic. (Docket No. 36-1.) The subpoena commanded "[a]ll records possessed by the TDOC related to the death of inmate Marktavious Twilley (00528772)" and included the following five requests:

1. All video footage related to Mr. Twilley's death;

2. All correspondence and incident reports received from CoreCivic regarding Mr. Twilley's death;

3. All contract non-compliance reports and documents concerning CoreCivic liquidated damages penalties for March 2019-March 2022;

4. Trousdale Turner Correctional Center's staffing rosters for March 21–28, 2022; and

5. All recordings or transcripts of testimony by TDOC officials, whether given during a lawsuit or during legislative hearings, concerning contract non-compliance, understaffing, or prison conditions at Trousdale Turner Correctional Center from March 2018 until the present time.

(*Id.*)

In response to the subpoena, TDOC served an objection letter on July 26, 2023. (Docket No. 36-2.) This letter included four general objections: (1) the documents were part of an active criminal investigation and protected by the investigative or law enforcement privilege;[2] (2) the documents could be obtained from another source that would be more convenient, less burdensome, or less expensive; (3) the information could be obtained in party discovery; and (4)

---

[2] At the same time that Plaintiff issued a subpoena to TDOC, she also issued a subpoena to non-party District Attorney Jason L. Lawson (Docket No. 17-1) who also objected on the investigative or law enforcement principle (Docket No. 17-3). In an order denying Plaintiff's consent motion to stay case management deadlines, the Court disagreed with Lawson's and TDOC's position on the investigative or law enforcement principle and held that "the Court can require production of the information subject to a protective order, including for attorneys' eyes only, or otherwise impose restrictions to protect the integrity of the criminal prosecution." (Docket No. 18 at 5.)

2

the information may be protected by the attorney-client privilege, work product privilege, or any other privilege. (*Id.* at 1–2.) The objection letter also included specific objections to each of the five requests:

> 1. All video footage related to Mr. Twilley's death.
>
> RESPONSE: TDOC objects to this request to the extent it seeks information available in party discovery and information that is part of an active criminal investigation. Specifically, Defendant Core Civic is in the best position to provide video from its facilities.
>
> 2. All correspondence and incident reports received from CoreCivic regarding Mr. Twilley's death.
>
> RESPONSE: TDOC objects to this request because it seeks information that was generated by CoreCivic and more easily obtained from CoreCivic in party discovery.
>
> 3. All contract non-compliance reports and documents concerning CoreCivic liquidated damages penalties for March 2019-March 2022.
>
> RESPONSE: TDOC objects to this request to the extent that the requested documents are a matter of public record and are available through other means. Without waiving, and subject to the foregoing objection, TDOC is in the process of reviewing its records and will produce any non-privileged and non-protected documents within the timeframe set forth in the Subpoena.
>
> 4. Trousdale Turner Correctional Center's staffing rosters for March 21–28, 2022.
>
> RESPONSE: TDOC objects to this request because it seeks information that was generated by CoreCivic, the operator of Trousdale Turner Correctional Facility, and more easily obtained from CoreCivic in party discovery.
>
> 5. All recordings or transcripts of testimony by TDOC officials, whether given during a lawsuit or during legislative hearings, concerning contract non-compliance, understaffing, or prison conditions at Trousdale Turner Correctional Center from March 2018 until the present time.
>
> RESPONSE: TDOC objects to this request to the extent that the requested documents are a matter of public record and are available through other means. TDOC objects that the request is overly broad and vague, to the extent it seeks unspecified transcripts or testimony, and that it is unduly burdensome in seeking all such vaguely referenced information.

(*Id.* at 2-3.) The letter also included a reservation of TDOC's right to seek a protective order to maintain the confidentiality of certain information. (*Id.* at 3.)

Following this initial exchange, Plaintiff's counsel and counsel for TDOC engaged in discussions regarding the propriety of the subpoena, the scope of the requested documents, and which documents would be produced. (Docket No. 36-3, 44-1.) However, the parties could not come to an agreement and, as required by the Initial Case Management Order, scheduled an in-person meet-and-confer to take place on October 11, 2023. (Docket No. 36-4 at 6–7.) The parties then cancelled the meeting because they believed that they had resolved their discovery dispute. (*Id.* at 1–4.) Plaintiff and Defendants then jointly moved the Court to enter an agreed protective order (Docket No. 28), which the Court entered (Docket No. 31) and then revised at the parties' request (Docket No. 34).

Following entry of the revised agreed protective order, TDOC produced documents to Plaintiff in response to the subpoena on December 27, 2023. (Docket No. 36-7 at 2–3.) However, after reviewing the production, Plaintiff believed that TDOC wrongly withheld a vast number of responsive documents, particularly in response to Requests Nos. 1, 2, and 5. (*Id.* at 1–2.) After communicating her concerns to TDOC and receiving a response, Plaintiff filed the pending motion for contempt in which she seeks an order (1) holding TDOC in civil contempt under Rule 45(g)[3] for failing to obey the subpoena; (2) awarding her reasonable attorney's fees in connection with the motion; and (3) holding TDOC in criminal contempt under 18 U.S.C. § 401(3) for wrongfully withholding documents. (Docket No. 36 at 10–12.)

---

[3] Unless otherwise noted, all references to rules are to the Federal Rules of Civil Procedure.

TDOC opposes the motion and argues that Plaintiff has not proved by clear and convincing evidence that TDOC violated or failed to comply with the subpoena and argues that TDOC cannot be held in contempt under Rule 45(g) without an opportunity to be heard. (Docket No. 42 at 6–8.)

## II. LAW AND ANALYSIS

First, there is no indication in the motion that Plaintiff's counsel conferred with TDOC's counsel about the relief requested in the motion prior to filing of the motion, as required by Local Rule 7.01(a)(1). Had Plaintiff's counsel done so, they would at least have realized that there is a difference of interpretation of the email exchange and, perhaps, proceeded with the mandatory discovery dispute resolution procedures before resorting to a motion for contempt. Regardless, the failure to confer alone is enough to deny the requested relief. Nevertheless, to avoid any later refiling of an identical motion on substantially the same facts, the Court will address the merits of the motion.

Rule 45 governs nonparty discovery, including the issuance of a subpoena commanding a non-party to produce documents or tangible things. Fed. R. Civ. P. 45(a)(1). This Rule also governs contempt procedures and provides that the court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g). "Although a subpoena is in a sense the command of the attorney who completes the form, defiance of a subpoena is nevertheless an act in defiance of a court order and exposes the defiant witness to contempt sanctions." Fed. R. Civ. P. 45(a)(2) advisory committee's note to 1991 amendment.

What constitutes an "adequate excuse" within the meaning of Rule 45 is not clear. *Bariteau v. Krane*, 206 F.R.D. 129, 131 (W.D. Ky. 2001); *see also* Fed. R. Civ. P. 45(e) advisory committee's note to 1991 amendment ("'Adequate cause' for a failure to obey a subpoena remains

5

undefined.").[4] Courts have often found a person in contempt for refusing to comply with a validly issued subpoena without objecting to it or making a motion to quash. *Bariteau*, 206 F.R.D. at 131. However, the "prevailing view" is that a timely objection to a subpoena is itself an "adequate excuse," precluding a finding of contempt for failure to obey the subpoena. *Turner v. Atlantic Southeast Airlines, Inc.*, No. 3:08-mc-0002, 2008 WL 2115755, at *3 (M.D. Tenn. May 16, 2008) (citing *Bariteau*, 206 F.R.D. at 129); *see also Thomas v. Chambers*, No. 18-4373, 2019 WL 8888171, at *4 (E.D. La. May 15, 2019) (citing *Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983); *Flatow v. The Islamic Republic of Iran*, 196 F.R.D. 203, 208 (D.D.C. 2000), *vacated in part on other grounds*, 305 F.3d 1249 (D.C. Cir. 2002)). In their notes to the 2013 amendments to the Rules, the Advisory Committee stated:

> The rule is also amended to clarify that contempt sanctions may be applied to a person who disobeys a subpoena-related order, as well as one who fails entirely to obey a subpoena. In civil litigation, it would be rare for a court to use contempt sanctions without first ordering compliance with a subpoena, and the order might not require all the compliance sought by the subpoena. Often contempt proceedings will be initiated by an order to show cause, and an order to comply or be held in contempt may modify the subpoena's command. Disobedience of such an order may be treated as contempt.

Fed. R. Civ. P. 45(g) advisory committee's note to 2013 amendment.

Whether to hold a party in contempt is within the sound discretion of the district court, but it is a power that "should not be used lightly." *Anderson v. Furst*, No. 2:17-12676, 2019 WL 232971, at *2 (E.D. Mich. May 31, 2019) (quoting *Electrical Workers Pension Trust Fund of Local Union # 58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003). A party seeking to establish contempt must produce "clear and convincing evidence" showing that the party opposing

---

[4] The language of Rule 45(g) was previously in different sections of Rule 45, including Rule 45(e). *See Weems v. Omni Hotels Mgmt. Corp.*, No. 3:21-cv-00293, 2022 WL 989144, at *1 n.2 (M.D. Tenn. Mar. 31, 2022).

6

contempt violated a "definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *Gary's Elec.*, 340 F.3d at 378 (quoting *NLRB v. Cincinnati Bronze Inc.*, 829 F.2d 585, 588 (6th Cir. 1987)).

Once the moving party establishes its prima facie case, "the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is *presently* unable to comply with the court's order." *Id.* (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)). Good faith is not a defense to civil contempt. *Peppers v. Barry*, 873 F.2d 967, 969 (6th Cir. 1989). Rather, the test is whether the alleged contemnor "took all reasonable steps within their power to comply with the court's order." *Id.* Nevertheless, "contempt motions for noncompliance with a discovery subpoena should be entertained with special attention to the procedural and substantive rights of the nonparty witness." *Buckner v. Peyton's Southeastern, Inc.*, No. 1:19-CV-00244-JRG-SKL, 2020 WL 13700682, at *2 (E.D. Tenn. Jul. 22, 2020) (quoting *U.S. S.E.C. v. Hyatt*, 621 F.3d 687, 694 (7th Cir. 2010)).

In her motion, Plaintiff argues that TDOC should be held in contempt under Rule 45(g) because it failed to obey the subpoena. (Docket No. 36 at 11.) She contends that TDOC does not have an "adequate excuse" for its failure because it withdrew certain objections to the subpoena and because it has knowingly and falsely claimed that it does not possess certain responsive documents. (*Id.*)

In response, TDOC argues that it should not be held in contempt because Plaintiff has not met her burden of proof. (Docket No. 42 at 6–7.) TDOC contends that it lodged objections to the subpoena, so Plaintiff should have first sought an order from the Court compelling TDOC to comply with the subpoena but failed to do so. On that basis, TDOC argues that it cannot be held in contempt for violating a court order related to the subpoena because there has been no such

7

court order. It asserts that it did not withdraw its objections, and that the Court has not found that those objections were unfounded or compelled TDOC to make a production. Finally, it contends that, even if the Court does find that Plaintiff has met her burden of proof under Rule 45(g), TDOC must be given an opportunity to be heard. (*Id.* at 8.)

The Court largely agrees with TDOC that Plaintiff has not met her burden to show by "clear and convincing evidence" that TDOC violated a "definite and specific order of the court requiring [it] to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Gary's Elec.*, 340 F.3d at 378. The Court is particularly persuaded by the Advisory Committee's note that "it would be rare for a court to use contempt sanctions without first ordering compliance with a subpoena." Fed. R. Civ. P. 45(g) advisory committee's note to 2013 amendment. In this matter, Plaintiff did not seek an order from this Court compelling TDOC's compliance with the subpoena. As such, the Court cannot find that TDOC has violated any order of the Court.

Further, the Court is not able to find by "clear and convincing evidence" that TDOC violated the subpoena and that, therefore, a finding of contempt is appropriate. Plaintiff asserts that TDOC violated the subpoena when it withdrew its earlier-stated objections to all five Requests, promised to produce documents, but then failed to do so in response to Requests Nos. 1, 2, and 5, which sought the following: (i) video footage related to Mr. Twilley's death (Request No. 1); (ii) correspondence or incident reports that TDOC received from CoreCivic regarding Mr. Twilley's death (Request No. 2); and (iii) recordings or transcripts of testimony by TDOC officials concerning contract non-compliance, understaffing, or prison conditions at Trousdale Turner Correctional Center (Request No. 5).

At issue is whether TDOC waived its previously asserted objections to the subpoena requests. To support its position that the objections were waived, Plaintiff focuses on an October

8

10, 2023 email exchange between counsel regarding the cancellation of a meet-and-confer between counsel for the parties:

> <u>TDOC's Counsel</u>: After speaking with my client, TDOC is agreeable to enter into a protective order. Please confirm that the meeting should be cancelled.
>
> <u>Plaintiff's Counsel</u>: To clarify, the question is whether the TDOC will provide the subpoenaed documents pursuant to a protective order, not whether the TDOC is generally agreeable to one. If the TDOC will withdraw its objections and provide the documents, though, then yes, there is no reason to meet tomorrow.
>
> <u>TDOC's Counsel</u>: Yes, TDOC will provide the subpoenaed documents pursuant to a protective order. I apologize – I should have been more specific.

(Docket No. 36-4 at 1–2.) Plaintiff asserts that this exchange was not "ambiguous" and that the only correct interpretation is that TDOC withdrew all its prior objections to all subpoena requests. (Docket No. 45 at 2.) Plaintiff focuses on the fact that counsel for Plaintiff asked if TDOC would withdraw its "objections" (plural) (i.e. all objections) rather than its "objection" (singular) (i.e. only the investigatory privilege objection).

TDOC disagrees that this email contained a waiver of all its objections. Instead, TDOC argues that this email exchange concerned only those documents that it had been withholding under the investigatory privilege. (Docket No. 42 at 3.) According to TDOC, the parties were cancelling a meet-and-confer to discuss the investigatory privilege issue, and the documents to which counsel referred were therefore the documents being withheld pursuant to the investigatory privilege in response to Requests Nos. 3 and 4. (*Id.*) In other words, TDOC believes that the waiver was narrowly confined to the investigatory privilege objections asserted in response to Requests Nos. 3 and 4 and did not extend to the other objections asserted in response to Requests Nos. 1, 2, and 5.

To support its position, TDOC points to an email dated August 29, 2023 in which counsel for TDOC expressly stated that it maintained its objections from its July 26, 2023 objection letter.

9

(Docket No. 44-1 at 61.) In that email, counsel for TDOC stated, "To the extent that TDOC has asserted the prosecutorial privilege, and that the DA has waived that objection, TDOC has no intention of re-asserting that privilege. However, TDOC maintains all other previously lodged objections in its July 26, 2023 letter." (*Id.*)

The Court agrees with TDOC that Plaintiff has failed to show by "clear and convincing" evidence that TDOC waived all its previously asserted objections to the subpoena. While the Court can understand how Plaintiff may have interpreted this email exchange to concern all TDOC's prior objections, the Court does not agree that TDOC's interpretation of this exchange "is flatly incompatible with the parties' actual correspondence, which is not ambiguous." (Docket No. 45 at 2.) The Court is persuaded by TDOC's argument that this waiver was narrowly confined to its investigatory privilege objections given that the parties had been discussing the meet-and-confer to discuss issues related to that privilege.

Further, the Court is not swayed by many of Plaintiff's arguments in support of its position. For example, Plaintiff's argument that her counsel's use of the plural "objections" rather than singular "objection" is not enough to demonstrate by "clear and convincing evidence" that TDOC waived all of its objections. The context of the October 10, 2023 email exchange between counsel and prior statements made by TDOC's counsel that it maintained all other previously lodged objections are enough to cast Plaintiff's version of events into doubt. The standard for finding a non-party to be in contempt is very high, *see Buckner*, 2020 WL 13700682 at *2, and the Court does not find that Plaintiff has met this high bar.

For these reasons, the Court finds that Plaintiff has not shown by "clear and convincing evidence" that TDOC withdrew all its objections to the subpoena and did not have an "adequate excuse" for failing to comply with the subpoena. The Court understands Plaintiff's position that

10

Case 3:23-cv-00077 Document 60 Filed 02/08/24 Page 10 of 12 PageID #: 5520

TDOC withdrew its objections, but the correct course of action would have been for Plaintiff's counsel to confer with TDOC's counsel about the issue and then to proceed with the Court's required discovery dispute resolution procedures. Before proceeding directly to a contempt request, Plaintiff should have moved for an order compelling TDOC to comply with the subpoena under Rule 45(d)(2)(B)(i).[5] In correspondence between counsel for the parties, Plaintiff's counsel referenced filing a motion to compel TDOC to comply with the subpoena, but chose not to do so for what could have been any number of legal or strategic reasons. (Docket No. 44-1 at 6, 9, 16, 20.) However, without such a motion before it, the Court is not able to and will not rule on the adequacy of TDOC's objections or its document production in response to Plaintiff's subpoena.[6]

Further, because the Court does not find TDOC to be in civil contempt under Rule 45(g), the Court will not award attorney's fees to Plaintiff or address the propriety of criminal contempt under 18 U.S.C. § 401(3).

---

[5] In her motion to compel, Plaintiff discussed a motion for compliance under Rule 45(d)(2)(B)(i) but asserted that this was not possible because she believed that TDOC had withdrawn all its objections. (Docket No. 36 at 11 n.2.) The Court finds no purchase in that argument. Had Plaintiff's counsel simply raised this issue with TDOC's counsel, as required under the discovery dispute resolution procedures in effect in this case, it would have been patently obvious that TDOC contends that did not withdraw all its objections. At that point, if the disagreement remained unresolved, the issue could have been brought to the Court's attention by the filing of a joint discovery dispute statement and joint motion for a discovery conference, which could have included a request to file a motion for compliance. As Plaintiff stated in her reply, "if the TDOC actually had pending objections that required adjudicating" then it would be true that "TDOC's objections to Plaintiff's subpoena have not been adjudicated." (Docket No. 45 at 4.)

[6] For example, in her reply, Plaintiff argues that TDOC has withheld documents that it created as part of its investigation into Mr. Twilley's death, but that this withholding is unreasonable because TDOC withdrew its investigatory privilege objection. (Docket No. 45 at 3.) The Court will not weigh in on the propriety of TDOC's actions because this question is not properly before it via a motion for compliance under Rule 45(d)(2)(B)(i).

## III. CONCLUSION

For these reasons, Plaintiff's motion to hold non-party the Tennessee Department of Corrections in contempt (Docket No. 36) is **DENIED**. Prior to the filing of any other motions regarding this issue, counsel for Plaintiff and for TDOC must comply with the discovery dispute resolution procedures in effect in this case.

It is SO ORDERED.

_____
BARBARA D. HOLMES
United States Magistrate Judge