IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| LAKENYA MCGHEE-TWILLEY, individually, and as next-of-kin to the deceased, MARKTAVIOUS TWILLEY, | § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Case 3:23-cv-00077 |
| CORECIVIC OF TENNESSEE, LLC, as owner and operator of TROUSDALE TURNER CORRECTIONAL CENTER, and MARTIN FRINK, LARODERICK MCDAVID, DENNIS KAISER, | § § § § § § § | JURY DEMANDED |
| *Defendants.* | § | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR REVIEW OF NONDISPOSITIVE ORDER OF MAGISTRATE JUDGE [Doc. 60]**

## I. INTRODUCTION

On October 10, 2023, the Tennessee Department of Correction agreed—in writing—to provide the Plaintiff her "subpoenaed documents pursuant to a protective order[,]" and it answered "Yes" in response to the Plaintiff's direct question about whether "the TDOC will withdraw its objections and provide the documents[.]" *See* Doc. 36-4 at 1–2. A scheduled discovery dispute conference between the Plaintiff and the TDOC was then canceled as a result of the TDOC's unambiguous representation on the matter. *See id.* More than two months later, though—on December 29, 2023—the TDOC transmitted a deliberately incomplete document production based on the same objections that it had withdrawn in writing back in October. *See* Doc. 36-9. The TDOC also intentionally withheld responsive investigative records despite maintaining that it had only ever agreed

to withdraw its investigative privilege objection.

The TDOC's professed explanation for this series of events—which the Magistrate Judge credited in response to the Plaintiff's contempt petition—was to "point[] to an email dated August 29, 2023 in which counsel for TDOC expressly stated that it maintained its objections from its July 26, 2023 objection letter." *See* Doc. 60 at 9 (citing Doc. 44-1 at 61). According to the TDOC and the Magistrate Judge, this correspondence supports the conclusion that the TDOC's later waiver "was narrowly confined to the investigatory privilege objections asserted in response to Requests Nos. 3 and 4 and did not extend to the other objections asserted in response to Requests Nos. 1, 2, and 5." *See* Doc. 60 at 9. This explanation makes no sense for a host of reasons, though.

*First*, the email at issue was sent in August, and the TDOC's written withdrawal of its "objections"—plural—happened in October. *See* Doc. 36-4 at 1–2. Thus, the August email has no bearing on the matter, and the TDOC has never been able to explain why it agreed to waive its "objections"—plural—in writing if it was secretly waiving only one of them.

*Second*, even assuming that it were true that the TDOC only intended to waive its "investigatory privilege" objection, the Plaintiff has demonstrated beyond dispute that the TDOC *still willfully withheld responsive records in response to the Plaintiff's subpoena, including all of the investigative records that the TDOC created as part of its investigation into Mr. Twilley's death.* The only reason the Plaintiff knows and can prove that such documents exist is because some of them were produced by a different entity in response to a different subpoena. *See* Doc. 35-1 (TDOC-created investigative document that was produced by District Attorney Lawson). Despite the TDOC's demonstrably willful non-compliance with the Plaintiff's subpoena even under the TDOC's single-

objection waiver explanation, though, the Magistrate Judge ruled that "[t]he Court will not weigh in on the propriety of TDOC's actions because this question is not properly before it via a motion for compliance under Rule 45(d)(2)(B)(i)." *See* Doc. 60 at n.6.

*Third*, the TDOC's response to the Plaintiff's subpoena was not only incomplete; it was *false*. The TDOC claimed that "[w]ith respect to Request No. 5, TDOC has reviewed its files and there are no responsive documents in its possession." Doc. 36-9 at 1. But the Plaintiff can prove—and she did prove—that the TDOC was not being truthful about the matter. *See, e.g.,* Docs. 36-10, 36-11, 36-12, 36-13, & 36-14. When that falsehood was called to the Court's attention, the TDOC also declined to provide an explanation. *Compare* Doc. 36 at 7–9 (asserting the claim and substantiating it with evidence), *with* Doc. 42 (never responding to it). The Magistrate Judge's Order did not address the issue afterward. *See generally* Doc. 60.

The Magistrate Judge also faulted *the Plaintiff* for the series of events that followed the TDOC's demonstrably willful noncompliance with her subpoena. According to the Magistrate Judge, "[b]efore proceeding directly to a contempt request, Plaintiff should have moved for an order compelling TDOC to comply with the subpoena under Rule 45(d)(2)(B)(i)." *See* Doc. 60 at 11. But the Plaintiff didn't proceed directly to a contempt request; to the contrary, she followed the Court-ordered discovery dispute process and obtained written confirmation that the documents she had subpoenaed would be produced. *See* Doc. 36-4. When they were not produced months later based on objections the TDOC had withdrawn in writing, though, the Plaintiff's only remedy was contempt, both because all of the objections to the Plaintiff's subpoena were withdrawn and because the Magistrate Judge's own order precluded a discovery dispute from being initiated by this point. *See* Doc. 27 at 1–2 (requiring such discovery disputes to be brought to the

Court's attention by "December 13, 202[3]."). Thus, had the Plaintiff done precisely what the Magistrate Judge has said she should have, the Magistrate Judge would have denied the Plaintiff's motion as untimely.

The end result here is that the Plaintiff cannot win. In response to clear bad faith and deliberate noncompliance by the TDOC—which: (1) withdrew objections in writing, only to reassert them after the discovery dispute deadline expired; (2) withheld responsive investigative records it had agreed to produce even under the TDOC's own professed explanation that it had only waived its investigative privilege objection; and (3) outright lied about whether it had records responsive to a different document category— the Magistrate Judge summarily denied the Plaintiff's contempt petition without a hearing. This result will embolden the TDOC to engage in further malfeasance. Simply put: its misconduct here could hardly be clearer, and if no sanction will result from it, then no sanction ever will. For these reasons, the Magistrate Judge's non-dispositive order (Doc. 60) should be reversed, and this Court should, at minimum, hold a contempt hearing.

## II. FACTS

On July 12, 2023, the Plaintiff issued and then served on the TDOC a subpoena to produce "[a]ll records possessed by the TDOC related to the death of inmate Marktavious Twilley (00528772), including, without limitation," five specified categories of documents. *See* Doc. 36-1. On July 26, 2023, the TDOC propounded written objections objecting to producing any of the documents in its possession that were responsive to the Plaintiff's subpoena. *See* Doc. 36-2.

In the Plaintiff's view, the TDOC's wholesale and largely boilerplate objections lacked any plausible merit, and the Plaintiff communicated her position on the matter to

- 4 -
Case 3:23-cv-00077    Document 62    Filed 02/08/24    Page 4 of 20 PageID #: 5529

the TDOC immediately. *See* Doc. 36-3. Accordingly, a discovery dispute commenced, and the Plaintiff began the process of attempting to confer before bringing the dispute to the attention of the Court.

On September 15, 2023, Magistrate Judge Holmes issued the order set forth at Docket No. 18. As relevant to this Motion, the order stated as follows:

> The Court has reviewed the cases cited in the Attorney General's letter objecting to production of the criminal investigative file. (Docket No. 17-3.) Those cases do not, however, support the contention that such information is not discoverable by Plaintiff. Rather, those cases discuss the restriction on **public access** to such information pending final disposition of the criminal charges. Here, the Court can require production of the information subject to a protective order, including for attorneys' eyes only, or otherwise impose restrictions to protect the integrity of the criminal prosecution.

Doc. 18 at 5.

The Plaintiff promptly transmitted Magistrate Judge Holmes' order to the TDOC in the hopes that it would simplify and resolve the TDOC's objections to the Plaintiff's subpoena by allowing the TDOC to produce responsive documents under a protective order. *See* Doc. 36-4 at 8. An in-person meet-and-confer to address the TDOC's (and, at that time, another non-party's) objections was nonetheless scheduled, initially, for October 11, 2023 at 1:00 p.m. at the Attorney General's Office. *See id.* at 5–7.

Before the in-person meet-and-confer discovery dispute conference took place, the TDOC agreed to produce the documents responsive to the Plaintiff's subpoena subject to a protective order, and it agreed in writing to withdraw its "objections"—plural—to the Plaintiff's subpoena. *See id.* at 1–3. No mention was made that only one objection was being withdrawn; that only some documents would be produced; or that any number of other objections were being maintained. *See id.* Accordingly, the Plaintiff's dispute with the TDOC having been resolved by agreement in writing, and the TDOC having

- 5 -
Case 3:23-cv-00077   Document 62   Filed 02/08/24   Page 5 of 20 PageID #: 5530

affirmatively represented that it "will provide the subpoenaed documents pursuant to a protective order," *see id.* at 1, the Parties' scheduled meet-and-confer was canceled by the TDOC by agreement. *Id.* at 1.

The Plaintiff also made certain to confirm without ambiguity that the TDOC was agreeing to withdraw its objections and to comply with the Plaintiff's subpoena upon entry of a protective order before the meet-and-confer was canceled. For the Court's review, the Parties' correspondence on the matter, verbatim, was as follows:

_____

**[TDOC Counsel]:**

> Good Afternoon,
>
> After speaking with my client, TDOC is agreeable to enter into a protective order. Please confirm that the meeting should be cancelled.
>
> Thank you!

_____

**[Plaintiff's Counsel]:**

> To clarify, the question is whether the TDOC will provide the subpoenaed documents pursuant to a protective order, not whether the TDOC is generally agreeable to one. *If the TDOC will withdraw its objections and provide the documents, though, then yes, there is no reason to meet tomorrow.*

_____

**[TDOC Counsel]:**

> *Yes, TDOC will provide the subpoenaed documents pursuant to a protective order.* I apologize – I should have been more specific.
>
> We will cancel the meeting.

_____

*Id.* at 1–3 (emphases added).

On November 28, 2023, the Court entered an order requiring the parties and third-

- 6 -
Case 3:23-cv-00077   Document 62   Filed 02/08/24   Page 6 of 20 PageID #: 5531

parties to bring any then-existing discovery disputes "to the Court's attention by the filing of a joint motion for a discovery conference and compliant joint discovery dispute statement by no later than **December 13, 202[3]**."[1] *See* Doc. 27 at 2. Because the TDOC had agreed, in writing, to withdraw its objections and stated that it "will provide the subpoenaed documents pursuant to a protective order[,]" *see* Doc. 36-4 at 1, the Plaintiff had no discovery dispute with the TDOC to bring to the Court's attention. Thus, no dispute was brought to the Court's attention by the Court's December 13, 2023 deadline.

On December 12, 2023, the Court entered an Agreed Protective Order. *See* Doc. 31. As a result, the Plaintiff expected to receive the outstanding subpoenaed documents from the TDOC and demanded them accordingly. *See* Doc. 35-5 at 1. Because the protective order that was entered differed slightly from the version that had been agreed upon by the Parties, though, on December 20, 2023, the TDOC, through counsel, did not then produce the outstanding documents and later responded as follows:

---

Daniel,

As soon as the recently-filed amended order is signed, we will produce the remaining documents in our possession.

Thank you.

Toni-Ann M. Dolan

---

*Id.*

On December 21, 2023, the Court entered a Revised Agreed Protective Order. *See*

---

[1] The order says "December 13, 2024," but it is clear from the context that it meant 2023, as all "as-of-yet-unidentified discovery disputes" were to "brought promptly to the Court's attention and by no later than April 5, 2024[.]" *See* Doc. 27 at 2.

Doc. 34. Because, again, the TDOC had agreed in writing to "provide the subpoenaed documents pursuant to a protective order[,]" *see* Doc. 36-4 at 1, and because the TDOC had reaffirmed the day before that "[a]s soon as the recently-filed amended order is signed, we will produce the remaining documents in our possession[,]" *see* Doc. 36-5 at 1, the Plaintiff finally anticipated receiving from the TDOC the long-outstanding responsive documents that she had subpoenaed more than five months earlier.

The same day the Court's Revised Agreed Protective Order issued, the Plaintiff transmitted it to the TDOC's counsel and demanded prompt compliance with her subpoena. *See* Doc. 36-1 at 1. The TDOC did not respond. Accordingly, on December 22, 2023, the Plaintiff followed up again to demand production by no later than December 27, 2023 at 12:00 p.m. *Id*. The TDOC, through counsel, then responded that: "TDOC is in the process of marking the documents in our possession. We will send you a link by your designated deadline to access same." *Id*.

On December 27, 2023, the TDOC transmitted a document production to the Plaintiff. *See* Doc. 36-7 at 2–3. The TDOC's full production in response to the Plaintiff's subpoena is available at Doc. 36-8 (Non-Confidential TDOC Production Bates Numbered 63–97 and 2128–32) and Docs. 35- 2–6 (Marked Confidential TDOC Production).

The Plaintiff's review of the TDOC's document production revealed that a vast number of responsive documents—including all documents responsive to three entire categories of the Plaintiff's subpoena—had been withheld by the TDOC.

<u>First</u>, the TDOC did not produce any documents responsive to category #1 of the Plaintiff's subpoena, which sought: "All video footage related to Mr. Twilley's death[.]" *See* Doc. 36-1.

<u>Second</u>, the TDOC did not produce the "records possessed by the TDOC related to

the death of inmate Marktavious Twilley (00528772), including, without limitation . . . 2. All correspondence and incident reports received from CoreCivic regarding Mr. Twilley's death[.]" *See* Doc. 36-1. This deficiency was also particularly problematic because highly relevant *TDOC-generated* investigative documents were produced by a different party (District Attorney Lawson) in response to a different subpoena the Plaintiff issued in this case, just one example of which is available for the Court's review at Doc. 35-1. The nature of those documents makes clear that the TDOC conducted an in-depth investigation into Mr. Twilley's death and generated powerfully relevant documents as part of that investigation. *See id.* (relevant document created by the "State of Tennessee Department of Correction Office of Investigations"). As a result, it is clear that the TDOC has abundant records in its possession that relate directly "to the death of inmate Marktavious Twilley (00528772)" (Doc. 36-1 at 1), but it produced none of them in response to the Plaintiff's subpoena, and it did not produce anything that CoreCivic sent to the TDOC regarding Mr. Twilley's death, either.

<u>Third</u>, the TDOC did not produce any documents responsive to category #5 of the Plaintiff's subpoena, which sought: "All recordings or transcripts of testimony by TDOC officials, whether given during a lawsuit or during legislative hearings, concerning contract non-compliance, understaffing, or prison conditions at Trousdale Turner Correctional Center from March 2018 until the present time." *See* Doc. 36-1.

The Plaintiff promptly confronted the TDOC about these glaring deficiencies in its document production the same day that the deficient production was furnished, and the Plaintiff demanded an explanation for the deficiencies by no later than December 29, 2023. *See* Doc. 36-9 at 1–2. On December 29, 2023, the TDOC communicated its explanation as follows:

> Good Morning Daniel,
>
> As set forth in our July 26, 2023 letter, with respect to Request Nos. 1 and 2, the documents and information sought are most easily obtained through party discovery. With respect to Request No. 5, TDOC has reviewed its files and there are no responsive documents in its possession. TDOC maintains the position that it has adequately and fully responded to the Subpoena and has produced over 2,500 documents.

*See id.* at 1.

In other words, after: (a) waiving its earlier objections in writing and then canceling a scheduled discovery dispute conference based on that waiver, *see* Doc. 36-4 at 1–3; (b) causing the Plaintiff to avoid bringing a discovery dispute to the Court's attention by the Court's stated deadline as a result of that written waiver, *see* Doc. 27 at 2; and (c) communicating as recently as the previous week that "[a]s soon as the recently-filed amended order is signed, we will produce the remaining documents in our possession[,]" *see* Doc. 36-5 at 1, the TDOC intentionally withheld all documents responsive to category #1 and #2 of the Plaintiff's subpoena based on objections that it had withdrawn, in writing, several months earlier, and it withheld all investigative documents, too.

Separately, as to category #5 of the Plaintiff's subpoena (governing "All recordings or transcripts of testimony by TDOC officials, whether given during a lawsuit or during legislative hearings, concerning contract non-compliance, understaffing, or prison conditions at Trousdale Turner Correctional Center from March 2018 until the present time[,]" *see* Doc. 36-1 at 1, the TDOC's representation that it "reviewed its files and there are no responsive documents in its possession" (Doc. 36-9 at 1) was demonstrably

untruthful. TDOC officials have on several occasions testified about contract non-compliance, understaffing, or prison conditions at Trousdale Turner Correctional Center, including in recent litigation to which the TDOC was a party. For example, in just *one* recent case concerning conditions at Trousdale Turner Correctional Center, the TDOC's Commissioner testified in a responsive deposition (Doc. 36-10); the TDOC's designated 30.02(6) witness testified in a responsive deposition (Doc. 36-11); and both of the TDOC's contract monitors at Trousdale Turner Correctional Center testified in responsive depositions (Doc. 36-12 and Doc. 36-13). TDOC officials have also testified repeatedly about contract non-compliance and conditions at Trousdale Turner Correctional Center in legislative hearings, *see, e.g.,* Doc. 36-14 (Sep. 26, 2022 Hearing), including as recently as two weeks before the Plaintiff's contempt petition was filed. *See* Rose Gilbert, *State lawmakers 'disturbed' by findings that the Department of Corrections failed to appropriately prevent and investigate sexual assault*, WPLN (Dec. 15, 2023), [https://wpln.org/post/state-lawmakers-disturbed-by-findings-that-the-department-of-corrections-failed-to-appropriately-prevent-and-investigate-sexual-assault/](https://wpln.org/post/state-lawmakers-disturbed-by-findings-that-the-department-of-corrections-failed-to-appropriately-prevent-and-investigate-sexual-assault/) (Doc. 36-15). The Plaintiff only happens to have some number of documents in her possession that are responsive to category #5 of her subpoena already—which represent a tiny fraction of the universe of responsive materials—because her counsel has litigated similar cases before and acquired the documents in other litigation from non-TDOC sources.

Under these circumstances, the TDOC's claim that it "has reviewed its files and there are no responsive documents in its possession" regarding category #5 of the Plaintiff's subpoena was not believable. *See* Doc. 36-8. The TDOC plainly has responsive documents in its possession. *See, e.g.*, Docs. 36- 10–13**.** Its original objection also asserted that producing the documents in its possession that were responsive to category

#5 of the Plaintiff's subpoena would be "unduly burdensome," *see* Doc. 36-2 at 3—a position that cannot be reconciled with its newest representation that it lacks any responsive documents at all. *Compare id., with* Doc. 36-8. Thus, when the TDOC claimed—for the first time and against a mountain of contrary evidence—that it did not possess any "recordings or transcripts of testimony by TDOC officials, whether given during a lawsuit or during legislative hearings, concerning contract non-compliance, understaffing, or prison conditions at Trousdale Turner Correctional Center from March 2018 until the present time[,]" *see* Doc. 36-1 at 1; Doc. 36-8 at 1, it was clear that the TDOC was not just mistaken; it was *lying*. Regrettably, this also is not the first time that the TDOC has made "blatant factual misrepresentations" during litigation before this Court, and it has been warned that there may be "repercussions" for doing so again. *See, e.g., Friedmann v. Parker*, 573 F. Supp. 3d 1221, 1226, n.2 (M.D. Tenn. 2021) ("In the Answer to the Complaint, Defendants deny that two cells are "known or referred to as ... 'iron man' cells," that "Unit 1 has 'iron man' cells," and that Mr. Friedmann's "cell is an 'iron man' cell." (Doc. No. 16 ¶¶ 18, 41). This is remarkable given Defendants' own exhibits contain a TDOC report signed by multiple Defendants that describes Mr. Friedmann's cell as "an iron man cell." (Doc. No. 15-4 at 15). The Court resolves "disputed" facts in Mr. Friedmann's favor where the record contradicts Defendants' denials. **The Court warns Defendants there may be repercussions for future blatant factual misrepresentations presented to it.**") (citing Fed. R. Civ. P. 11) (emphasis added); *see also* Josh Keefe and Melissa Brown, *Tennessee executed two inmates by lethal injection since 2018. It didn't follow its own rules in either one*, THE TENNESSEAN (May 25, 2022), https://www.tennessean.com/story/news/investigations/2022/05/26/tennessee-

[death-row-lethal-injection-protocol-problems-independent-review-gov-bill-lee/9806784002/](https://...) ("after withdrawing key defense documents on May 6, just days after Lee's announcement, Tennessee Attorney General Herbert Slatery informed the court the state 'will correct any inaccuracies and misstatements once the truth has been ascertained.'").

Under these circumstances—where the TDOC agreed to withdraw its objections in writing; willfully refused compliance based on those withdrawn objections anyway after the discovery dispute deadline expired; withheld responsive investigative documents even under its own later-asserted explanation that it had only withdrawn its "investigative privilege" objection; and made blatant factual misrepresentations about not having any responsive documents in its possession—the appropriate remedy is contempt.[2] *See* Fed. R. Civ. P. 45(g) ("The court for the district where compliance is required . . . may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it."). All of the contempt requirements are satisfied here, too. In particular: (1) the TDOC has been served with the Plaintiff's subpoena; (2) the TDOC has failed, without adequate excuse, to obey the Plaintiff's subpoena even after repeatedly stating in writing that it would do so; and (3) the TDOC knowingly and willfully refused to comply with the clear, specific, and unambiguous terms of the Plaintiff's subpoena based on: (i) objections that it withdrew months beforehand; and (ii) a knowingly false claim that it does not possess documents that are responsive to category

---

[2] Fed. R. Civ. P. 45(d)(2)(B)(i) permits a motion for compliance when objections have been served. Here, though, where objections were served and then withdrawn alongside a producing party's promise to comply, *see* Doc. 36-4 at 1–3, there were no objections for the court to adjudicate. Thus, the only remedy available here is to enforce the subpoena with which the TDOC is refusing to comply.

- 13 -
Case 3:23-cv-00077   Document 62   Filed 02/08/24   Page 13 of 20 PageID #: 5538

#5 of the Plaintiff's subpoena.

For all of these reasons, the Plaintiff moved this Court to hold the TDOC in contempt pending compliance with the Plaintiff's subpoena. Doc. 36. The TDOC responded in opposition on January 19, 2024, arguing that the Plaintiff had not met her burden of proof and that the TDOC should not be held in contempt without a hearing. *See* Doc. 42. The Magistrate Judge then denied the Plaintiff's motion for contempt without hearing on February 8, 2024, *see* Doc. 60, and this motion for review followed.

### III. ARGUMENT

#### A. The Plaintiff conferred.

Though the TDOC itself raised no claim on the matter, *see* Doc. 42; *see also United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579, 206 L. Ed. 2d 866 (2020) ("In our adversarial system of adjudication, we follow the principle of party presentation."), the Magistrate Judge's order initially asserts that "there is no indication in the motion that Plaintiff's counsel conferred with TDOC's counsel about the relief requested in the motion prior to filing of the motion, as required by Local Rule 7.01(a)(1)." *See* Doc. 60 at 5. Setting aside that conferring about whether or not the TDOC opposed the relief sought by the Plaintiff (compliance with the subpoena and civil and criminal contempt) is self-evident under the circumstances and that the TDOC has clearly indicated that it opposes the relief sought, *see* Doc. 42, though, the Plaintiff *did* confer about compliance with her subpoena, which is the issue. The TDOC then canceled the scheduled conference after waiving its objections.

The Magistrate Judge's assumption that "[h]ad Plaintiff's counsel done so, they would at least have realized that there is a difference of interpretation of the email exchange and, perhaps, proceeded with the mandatory discovery dispute resolution

procedures before resorting to a motion for contempt" (*see* Doc. 60 at 5) is wrong, too. There is not a difference of interpretation of the emails. The TDOC's professed interpretation is not genuine; it is not serious; and *even if the TDOC's explanation that it only agreed to withdraw its investigative privilege objection is accepted as true*, the TDOC has still willfully refused to comply with the Plaintiff's subpoena by withholding all of the investigative records in its possession, which the Plaintiff knows exists only because another entity produced some of them. *See* Doc. 35-1 (TDOC-created investigative document that was produced by District Attorney Lawson).

The Magistrate Judge's order overlooks that problem, for which the TDOC cannot and did not provide or even attempt an explanation. *See* Doc. 60 at n.6 ("Plaintiff argues that TDOC has withheld documents that it created as part of its investigation into Mr. Twilley's death, but that this withholding is unreasonable because TDOC withdrew its investigatory privilege objection. (Docket No. 45 at 3.)." As grounds, the Magistrate Judge stated that: "The Court will not weigh in on the propriety of TDOC's actions because this question is not properly before it via a motion for compliance under Rule 45(d)(2)(B)(i)." *Id.*

Such a motion was forbidden by the Court's own scheduling order, however, which the TDOC strategically exploited by waiting until December 29, 2023 to pretend that it was still maintaining objections. *See* Doc. 27 at 1–2 (requiring such discovery disputes to be brought to the Court's attention by "December 13, 2024."). The Magistrate Judge's order omits that fact, which is material.

When that fact is considered, though, it is wrong to say that the Plaintiff could have, "perhaps, proceeded with the mandatory discovery dispute resolution procedures before resorting to a motion for contempt." Doc. 60 at 5. Such a process was no longer available

- 15 -
Case 3:23-cv-00077   Document 62   Filed 02/08/24   Page 15 of 20 PageID #: 5540

to the Plaintiff based on the Court's own order, and had the Plaintiff attempted that relief, she no doubt would have been chastised for seeking relief too late. Thus, the Magistrate Judge was correct to "address the merits of the motion" instead, *see* Doc. 60 at 5, though, as detailed below, the Magistrate Judge erred by denying it.

### B. The TDOC's professed explanation makes no sense, and even accepting it as true, the TDOC has still behaved contemptuously.

The TDOC's claimed explanation of events—that it only agreed to withdraw *one* of its asserted objections (an objection based on "the investigatory privilege") and only agreed to produce *some* responsive documents to the Plaintiff, *see* Doc. 42 at 4—is incompatible with the parties' actual correspondence. *See* Doc. 36-4 at 1–3 (stating: "Yes, TDOC will provide the subpoenaed documents pursuant to a protective order" in response to Plaintiff's question about whether "the TDOC will withdraw **its objections** and provide the documents[.]") (emphasis added). In response to a direct question about whether the TDOC would withdraw its "objections"—plural—and provide the subpoenaed documents pursuant to a protective order, the TDOC answered "Yes" and affirmatively represented that it "will provide the subpoenaed documents pursuant to a protective order." *Id.* Thereafter, though, the TDOC did not do what it promised to do. Nor did the TDOC ever state that it would provide only *some of* the documents that the Plaintiff subpoenaed, *see id.*, which would have resulted in the scheduled meet-and-confer and resulting discovery dispute process going forward instead of being canceled by agreement.

The TDOC's professed explanation of events also makes no sense in context. The TDOC's claim—which the Magistrate Judge credited—is that, based on an August 2023 email that predates its later (October 2023) waiver by several months, the TDOC only agreed to withdraw its "investigatory privilege objection" while secretly keeping its other

objections to the Plaintiff's subpoena in place. *See* Doc. 42 at 4. But chief among the responsive documents that the TDOC withheld *were the documents that the TDOC created as part of its investigation into Mr. Twilley's death*, *see, e.g.* Doc. 35-1, which are the exact documents that the TDOC now claims it narrowly withdrew its objection to producing. And as mentioned, the only reason the Plaintiff knows and can prove that such documents exist at all is because some of them were produced by a different entity in response to a different subpoena. *See, e.g., id*. (TDOC-created investigative document that was produced by District Attorney Lawson).

Given this fact, the Magistrate Judge was wrong to deny the Plaintiff's motion, and it was certainly wrong to do so without holding a hearing. Simply put: even based on the TDOC's own professed claim that it exclusively agreed to withdraw its investigatory privilege exemption, the evidence makes clear beyond dispute that the TDOC still intentionally withheld documents that were (and remain) responsive to the Plaintiff's subpoena. In particular, although the Plaintiff's subpoena commanded the TDOC to produce "[a]ll records possessed by the TDOC related to the death of inmate Marktavious Twilley (00528772)," *see* Doc. 36-1 at 1,[3] the TDOC has withheld 100% of the documents that it created as part of its investigation into Mr. Twilley's death—even though the TDOC now concedes that it withdrew its investigatory privilege objection. As a result, the

---

[3] The TDOC describes the Plaintiff's subpoena as having sought five discrete categories of documents and then asserts that "Plaintiff's motion only concerns TDOC's purported noncompliance with Request Nos. 1, 2, and 5." *See* Doc. 42 at 4–5. That is not accurate. The Plaintiff's subpoena sought "[a]ll records possessed by the TDOC related to the death of inmate Marktavious Twilley (00528772), including, without limitation[,]" five specified categories of documents. *See* Doc. 36-1. And the Plaintiff's motion specifically complains that the TDOC failed to produce "highly relevant *TDOC-generated* documents" in response to the Plaintiff's subpoena that were not among the five specified document categories. *See* Doc. 36 at 5–6, ¶ 14.

TDOC's explanation of events makes no sense, and the TDOC is still willfully violating the Plaintiff's subpoena even under its own alternative version of reality.

The fact that the TDOC falsely claimed that it "reviewed its files and there are no responsive documents in its possession" regarding category #5 of the Plaintiff's subpoena, *see* Doc. 36-9—even though it plainly has responsive documents, *see, e.g.,* Docs. 36-10, 36-11, 36-12, 36-13, & 36-14—also received no mention in the TDOC's response. *Compare* Doc. 36 at 7–9 (asserting the claim and substantiating it with evidence), *with* Doc. 42 (never responding to it). Instead, the TDOC simply ignored the issue, as did the Magistrate Judge afterward. Self-evidently, though, the fact that the TDOC has represented that it has no responsive documents when, in fact, it does is problematic. It is also transparently contemptuous, and the Plaintiff was entitled, at minimum, to a hearing on the matter as a result.

\*   \*   \*

This case presents clear, bad-faith discovery misconduct by a non-party with a history of such malfeasance. In response to a petition for contempt, the TDOC offered an explanation that not only is not believable, but which *does not address* the fact that—even if its "waiver-of-the-investigative-privilege-only" explanation is credited—the TDOC still intentionally withheld a trove of investigative documents without explanation. There is no circumstance in which such clear misbehavior can be considered an "adequate excuse," because even if the TDOC's explanation is credited, it is still acting contemptuously. By tolerating such misconduct, the Court will also embolden the TDOC to continue it. Chastising the Plaintiff for failing to pursue a discovery dispute process that the Court had ordered was no longer available is not the proper approach, either.

## IV. CONCLUSION

Given the TDOC's willful and bad-faith disobedience of this Court's lawful process and command—including by: (1) agreeing to comply with the Plaintiff's subpoena and withdrawing its objections in writing, only to reassert them after the deadline to raise a discovery dispute expired; (2) withholding responsive investigative documents despite acknowledging and insisting that it withdrew its investigative privilege objection; and (3) lying about whether it has additional documents responsive to the Plaintiff's subpoena in its possession—the TDOC should be held in contempt, both civil and criminal. As a result, the Magistrate Judge's order summarily denying the Plaintiff's contempt petition without hearing (Doc. 60) should be reversed.

Respectfully submitted,

/s/ Daniel A. Horwitz_____
Daniel A. Horwitz, BPR #032176
Lindsay Smith, BPR #035937
Melissa Dix, BPR #038535
HORWITZ LAW, PLLC
4016 Westlawn Dr.
Nashville, TN 37209
daniel@horwitz.law
lindsay@horwitz.law
melissa@horwitz.law
(615) 739-2888

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of February, 2024, a copy of the foregoing and all exhibits and attachments were sent via CM/ECF, or via email, to:

Joe Welborn
Erin Palmer Polly
Terrence M. McKelvey
222 Second Avenue, South
Suite 1700
Nashville, Tennessee 37201
Joe.Welborn@klgates.com
Erin.Polly@klgates.com
terrence.mckelvey@klgates.com

*Counsel for Defendants*


David Wickenheiser | Assistant Attorney General
Law Enforcement and Special Prosecutions Division
Office of Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202-0207
615.532.7277
David.Wickenheiser@ag.tn.gov

*Counsel for District Attorney Lawson*


Toni-Ann M. Dolan | Assistant Attorney General
Office of the Tennessee Attorney General
Law Enforcement and Special Prosecutions Division
P.O. Box 20207
Nashville, TN 37202-0207
p. 615.741.6739
toni-ann.dolan@ag.tn.gov

*Counsel for the Tennessee Department of Correction*


                                                  By:  /s/ Daniel A. Horwitz
                                                        Daniel A. Horwitz, BPR #032176