**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE**

| | | |
|---|---|---|
| **LAKENYA McGHEE-TWILLEY individually** | ) | |
| **and as next-of-kin to the deceased,** | ) | |
| **Marktavious Twilley** | ) | |
| | ) | **Case No. 3:23-cv-00077** |
| **v.** | ) | **Judge Campbell** |
| | ) | **Magistrate Judge Holmes** |
| **CORECIVIC OF TENNESSEE, LLC** *et al.* | ) | |

**To:    The Honorable William L. Campbell, Jr.**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Presently pending before the Court is Plaintiff's motion for leave to file a first amended complaint (Docket No. 67), to which Defendants CoreCivic of Tennessee, LLC ("CoreCivic"), Martin Frink, Dennis Kaiser, and Laroderick McDavid responded in opposition (Docket No. 74) and to which Plaintiff replied in support (Docket No. 75). For the reasons discussed below, Plaintiff's motion (Docket No. 67) is **GRANTED IN PART and DENIED IN PART** as provided for below.

## I.    BACKGROUND

Familiarity with this case is presumed and only those underlying facts and procedural history necessary to give context to or explanation of the Court's ruling are recited.[1]

Plaintiff filed her complaint on January 25, 2023 against CoreCivic, which operates private prisons, including Trousdale Turner Correctional Center ("TTCC"); Martin Frink, the warden of TTCC; Laroderick McDavid, an assistant shift supervisor at TTCC; and Dennis Kaiser, a shift supervisor at TTCC. (Docket No. 1 at ¶¶ 10–13.) Plaintiff alleges that her son, Marktavious Twilley, was an inmate at TTCC and that he was murdered by other inmates on March 28, 2022

---

[1] These facts are taken from the record, and unless otherwise noted, are largely undisputed.

after a large fight broke out among inmates. (*Id.* at ¶¶ 9, 10–11.) Plaintiff asserts that the fight occurred and was allowed to continue without staff intervention because TTCC was "severely understaffed" despise contractual staffing obligations. (*Id.* at ¶¶ 38–40.)

As a result of these allegations, Plaintiff asserted the following claims:

| Claim | Cause of Action | Defendants |
|---|---|---|
| 1 | Violation of 42 U.S.C. § 1983 | Frink, McDavid, Kaiser |
| 2 | Liability under *Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658 (1978) | CoreCivic |
| 3 | Negligence | CoreCivic, Frink, McDavid, Kaiser |
| 4 | Loss of consortium | CoreCivic, Frink, McDavid, Kaiser |

(*Id.* at ¶¶ 48–91.) Plaintiff seeks compensatory, consequential, and incidental damages; punitive damages; reasonable attorney's fees pursuant to 42 U.S.C. § 1988(b); and pre-judgment and post-judgment interest. (*Id.* at pp. 14–15.)

Defendants CoreCivic, Frink, McDavid, and Kaiser answered the complaint on April 14, 2023. (Docket No. 12.) Defendants largely deny the allegations made by Plaintiff and assert several defenses against the claims.

On May 24, 2023, the Court entered an initial case management order, which set a deadline of October 6, 2023 for the parties to amend or to add parties, which was later extended to February 16, 2024. (Docket No. 15 at ¶ H; Docket No. 47.)[2] The Court also set a deadline of January 26,

_____

[2] To be clear – and contrary to the insinuation in Plaintiff's supporting memorandum of law (Docket No. 68 at 1) – this new deadline simply extended the time for any party to seek leave to amend. The extended deadline did not, either explicitly or implicitly, give permission for unfettered amendments of pleadings by Plaintiff or Defendants as long as filed by the extended deadline. That is not how Rule 15 works. Further, although the Court's order analyzed whether Plaintiff had shown the requisite good cause for modification of the scheduling order under Rule 16(b)(4), the finding that Plaintiff demonstrated a basis to extend the amendment deadline was not a

2024 for the parties to complete all written discovery and fact witness depositions, which was also later extended to a new deadline date of April 26, 2024. (Docket No. 15 at ¶ G; Docket No. 27.)

On February 14, 2024, Plaintiff filed the instant motion for leave to amend her complaint. (Docket No. 67.) Her proposed amended complaint would add new defendants, a new claim against some of the new defendants, and new factual allegations. She seeks to make the following specific amendments to her complaint:

1. <u>Add Jones and Stokes as defendants</u>: Add two new defendants who worked at TTCC at the time of Mr. Twilley's death – Christopher Jones, a correctional officer, and Delores Stokes, a case manager – and allege their liability under Claim 1 (§ 1983) and Claim 3 (negligence).[3] (Docket No. 67-1 at ¶¶ 124–49.)

2. <u>Add five inmate defendants</u>: Add five new defendants who were inmates at TTCC at the time of Mr. Twilley's death – Keldrick Taylor, DaShawn Lytle, Donald Peoples, Demetrius Risner, and Dontavious Hendrix – and allege their liability under a new Claim 5 (battery).[4] (*Id.* at ¶¶ 175–78.)

3. <u>Revise § 1983 claim and *Monell* claim re prison doors</u>: Add a new allegation against Defendants Frink, McDavid, Kaiser, Jones, and Stokes under Claim 1 (§ 1983) and against Defendant CoreCivic under Claim 2 (*Monell* liability) for "failure to protect and negligence liability, and corresponding *Monell* liability, relating to the Defendants' defective prison doors based on new information that the Plaintiff only received weeks ago." (*Id.* at ¶¶ 124–67.)

4. <u>Revise § 1983 Claim re Jones' alleged conduct</u>: Add a new allegation against Defendants Frink, McDavid, Kaiser, Jones, and Stokes under Claim 1 (§ 1983) for "failure to protect and negligence liability based on one of the inmates who participated in Mr. Twilley's murder having been let into Mr. Twilley's pod by new Defendant Christopher Jones in contravention of policy despite that inmate being housed elsewhere." (*Id.* at ¶¶ 124–49.)

---

determination of the merits of any motion for leave to amend, including that Plaintiff could not have timely pursued the amendments for which she now requests leave.

[3] Plaintiff does not address whether she would seek damages related to loss of consortium from Christopher Jones or Delores Stokes.

[4] Plaintiff does not address whether she would seek damages related to loss of consortium from Keldrick Taylor, DaShawn Lytle, Donald Peoples, Demetrius Risner, or Dontavious Hendrix.

5. <u>Add new factual allegations</u>: Add new factual allegations related to the above new defendants and allegations.

(Docket No. 68 at 3.)

Defendants CoreCivic, Frink, McDavid, and Kaiser oppose Plaintiff's motion for leave to amend her complaint, but focus exclusively on reasons why the Court should deny Plaintiff's request to add Christopher Jones and Delores Stokes as defendants. (Docket No. 74 at 1.) Defendants argue that the statute of limitations has expired as to claims against Jones and Stokes:

> Defendants . . . specifically request that the Court deny Plaintiff's attempt to join two new defendants – Christopher Jones ("Jones") and Delores Stokes ("Stokes") – almost one year after expiration of the applicable statutes of limitations for the claims against them.[1]
>
>> Footnote 1: Defendants do not otherwise object to the Motion for Leave to File a First Amended Complaint.

(*Id.*)  Based on these statements and Defendants' limited responses why Jones and Stokes should not be added as defendants, the Court will treat as unopposed Plaintiff's proposed amendments to add five inmate defendants (No. 2 above), to revise the § 1983 claim and *Monell* claim to add allegations regarding the doors (No. 3 above), and to add new factual allegations related to the five inmate defendants and allegations regarding the doors (No. 5 above). Given Defendants' opposition to Plaintiff's proposed amendments to add Jones and Stokes as defendants under Claim 1 (§ 1983) and Claim 3 (negligence) (No. 1 above), the Court will also consider that opposition to include Plaintiff's proposed revisions to the § 1983 Claim to add allegations regarding Jones' alleged conduct (No. 4 above) and to add new factual allegations related to Jones and Stokes (No. 5 above).

## II.    LEGAL STANDARDS  AND ANALYSIS

Although the Sixth Circuit has not directly addressed whether a motion to amend is a dispositive or non-dispositive motion, most district courts in the Sixth Circuit, including this court, consider an order on a motion to amend to be non-dispositive. *See, e.g.*, *Gentry v. The Tenn. Bd. of Jud. Conduct*, No. 3:17-cv-00020, 2017 WL 2362494, at *1 (M.D. Tenn. May 31, 2017) ("Courts have uniformly held that motions to amend complaints are non-dispositive matters that may be determined by the magistrate judge and reviewed under the clearly erroneous or contrary to law standard of review . . .") (citations omitted); *Elliott v. First Fed. Comm. Bank of Bucyrus*, 821 F. App'x 406, 412–13 (6th Cir. 2020) (referring generally to motion for leave to amend as non-dispositive motion). Even though analysis of the futility of proposed amendments is equivalent to the analysis undertaken as part of a Rule 12(b)(6) motion, *see Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000) (proposed amendment is futile only if it could not withstand a Rule 12(b)(6) motion to dismiss), that does not change the conclusion that a magistrate judge may issue an order on the motion to amend.  *See, e.g.*, *Ellison v. Clarksville Montgomery Cnty. Sch. Sys.,* No. 3:17-CV-00729, 2018 WL 998337, at *1 (M.D. Tenn. Feb. 21, 2018) (magistrate judge's denial of motion to amend pleading, including on grounds of futility, is non-dispositive) (collection of cases); *Hira v. New York Life Ins*., No. 3:12-CV-373, 2014 WL 2177799, at *1 (E.D. Tenn. May 23, 2014) (decisions of magistrate judge on motions to amend involving the issue of futility are non-dispositive) (citations omitted). *See also Carver v. Houchens Food Grp., Inc.*, No. 119CV00031GNSCHL, 2020 WL 1978390, at *2 (W.D. Ky. Apr. 24, 2020) (amendment denied as futile by magistrate judge's memorandum opinion and order).

Typically, motions for leave to amend are considered under the deferential standard of Rule 15(a)(2), which directs that the court "should freely give leave when justice so requires." Fed. R.

5

Civ. P. 15(a)(2). Under that standard, the district court has substantial discretion and may deny a motion for leave "based on undue delay, bad faith or dilatory motive or futility of amendment." *Pedreira v. Ky. Baptist Homes for Children*, 579 F.3d 722, 729 (6th Cir. 2009). Further, notwithstanding the language in Rule 15(a)(2) that leave to amend shall be freely granted, "a party must act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995) (citing *Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968 (6th Cir. 1973)). "The longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Phelps v. McClellan*, 30 F.3d 658, 662 (6th Cir. 1994) (quoting *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983)) (internal quotation marks omitted).

At issue is whether the Court should grant leave to Plaintiff to amend her complaint to add two new defendants, Jones and Stokes, who allegedly worked at TTCC at the time of Mr. Twilley's death, and to allege their liability under Claim 1 (§ 1983) and Claim 3 (negligence).[5] Plaintiff argues that she should be granted leave to amend to add Jones and Stokes and allegations of their conduct and liability because "Rule 15's liberal standard of allowing amendments is not overcome by any other considerations under the circumstances of this case, including undue prejudice, bad faith, or futility." (Docket No. 68 at 8.) With respect to undue prejudice, Plaintiff contends that Defendants will suffer none but offers very little argument as to why. (*Id.*) Plaintiff further argues that she announced her desire to amend as soon as possible, so this motion for leave to amend

---

[5] As discussed above, the Court construes Defendants' position as being opposed only to the addition of Jones and Stokes as defendants, and as being unopposed to the other amendments that Plaintiff seeks to make relating to the five inmate defendants and the prison doors. Accordingly, it is unnecessary to address the substance of Plaintiff's arguments in favor of the unopposed amendments.

6

cannot be construed as being made in bad faith. (*Id.*) Finally, Plaintiff asserts that the proposed amendments are not futile because Tennessee's discovery rule applies and certain "tortious conduct and the tortfeasors involved in it were concealed from the Plaintiff and could not reasonably have been discovered by her until weeks ago." (*Id.* at 9.)[6]

Defendants oppose Plaintiff's request to add Jones and Stokes and related allegations. They argue that such an amendment is futile for the following reasons: (1) Plaintiff's claims against Jones and Stokes are time-barred; (2) neither Defendants nor Jones and Stokes engaged in fraudulent concealment such that the statute of limitations would be tolled; (3) Plaintiff's claims against Jones and Stokes do not "relate back" under Rule 15(c); and (4) the two-year statute of limitations in T.C.A. § 28-3-104(a)(2)(A) does not apply to Jones or Stokes. (Docket No. 74 at 3–16.) Specifically, Defendants argue that Plaintiff knew of the involvement of Jones and Stokes as early as May 23, 2022, when, in response to a request made under the Tennessee Open Records Act, counsel for Defendants produced Incident Statements specifying Jones' and Stokes' involvement. (Docket No. 74 at 1.)[7] Alternatively, Defendants assert that, "[a]t the latest, Plaintiff knew of the involvement of Jones and Stokes by January 25, 2023, because she included the Incident Statements that they drafted as an attachment to her original complaint filed on that date." (*Id*. at 1-2.) Defendants also argue that permitting this amendment would cause unreasonable delay,

---

[6] Plaintiff makes additional futility arguments, but these are related to adding the five inmate defendants and alleging their liability under a new Claim 5 (battery). Because Defendants do not oppose Plaintiff's proposed amendment to add these five defendants, the Court will not address Plaintiff's arguments regarding whether their addition is proper. However, the Court's silence should not be construed or relied on as an endorsement of those arguments.

[7] Plaintiff's filings do not assert that she did not receive the Incident Statements in this time frame.

7

including, potentially, extension of all case management deadlines and the current trial date. (*Id.* at 16–17.)

As an initial matter, the Court will not address the latter two futility arguments, namely: (3) whether the proposed claims against Jones and Stokes "relate back" under Rule 15(c), and (4) whether the two-year statute of limitations in T.C.A. § 28-3-104(a)(2)(A) applies to Jones or Stokes. Although Plaintiff discussed these two issues, those arguments were not related to Jones or Stokes. Rather, Plaintiff argued that the new allegations she proposed "as to the existing Defendants" (i.e., CoreCivic, Frink, McDavid, and Kaiser) relate back under Rule 15(c)(1)(B) because they "arise 'out of the conduct, transaction, or occurrence set out' in her original complaint" (Docket No. 68 at 8), and that the five defendants who were inmates at the time of Mr. Twilley's death "have been indicted" so the statute of limitations as to them is impacted by T.C.A. § 28-3-104(a)(2)(A) (*id.*). In other words, the relation-back argument and the two-year statute of limitations argument were not made in support of adding Jones and Stokes as defendants. Because Defendants do not object to Plaintiff's request to add additional allegations against the existing Defendants or to add the five defendants who were inmates at the time of Mr. Twilley's death, it is unnecessary to analyze whether and how Rule 15(c) or T.C.A. § 28-3-104(a)(2)(A) apply in this context.[8]

The Court will, however, analyze the first two futility arguments: (1) whether Plaintiff's claims against Jones and Stokes are time-barred, and (2) whether Defendants or Jones and Stokes engaged in fraudulent concealment such that the statute of limitations would be tolled. The Court

---

[8] Again, to be clear, the Court's decision not to address these specific arguments should not be construed as an endorsement of the arguments. Rather, the Court simply finds that as a matter of judicial economy, it is not necessary to address arguments made in support of requests that are unopposed.

8

will also address whether amendment would unduly delay this matter or whether there are any other bases upon which Plaintiff's motion for leave to amend is properly denied.

## 1. The Futility of Plaintiff's Proposed Claims Against Jones and Stokes

To determine whether amendment would be futile, a court considers whether the proposed amendment could survive a motion to dismiss under Rule 12(b)(6). *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017). *See also Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000) ("[A] proposed amendment is futile only if it could not withstand a Rule 12(b)(6) motion to dismiss."). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading. *Doe v. College of Wooster*, 243 F.Supp.3d 875, 887 (N.D. Ohio 2017) (citing *Elliot Co., Inc. v. Caribbean Util. Co.*, 513 F.2d 1176 (6th Cir. 1975)). A motion to dismiss should "not attack the merits of the case – it merely challenges the pleader's failure to state a claim properly." *Carson v. Pepsi Bottling Grp.*, No. 3:06CV487, 2007 WL 1464585, at *1 (E.D. Tenn. May 16, 2007) (citations omitted). When considering a motion under Rule 12(b)(6), a court must determine whether the complaint alleges sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The court generally considers the allegations in the complaint and may also consider matters of public record, orders, items appearing in the record in the case, and exhibits attached to the complaint. *Gardner v. United States*, 443 F. App'x 770, 773 (6th Cir. 2011) (internal citations omitted).[9]

---

[9] Consideration of extrinsic materials need not convert a motion to dismiss into a motion for summary judgment, "so long as the material are referred to in the complaint and are central to the claims contained therein." *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir.

Defendants argue that the two claims that Plaintiff proposes to assert against Jones and Stokes are futile because they are time-barred by the applicable statutes of limitations. (Docket No. 74 at 3–7.) As discussed above, Plaintiff seeks to amend her complaint to name Jones and Stokes as defendants and allege that they are liable under § 1983 and a theory of negligence for actions related to Mr. Twilley's death on March 28, 2022. Defendants argue that the statute of limitations for both claims is one year. According to Defendants, Plaintiff was therefore required to assert these claims by March 28, 2023, which she failed to do.

Plaintiff does not dispute that the applicable statute of limitations for a § 1983 or a negligence claim is one year. Rather, Plaintiff disagrees that the statute of limitations bars her from asserting claims against Jones and Stokes because, she argues, the discovery rule tolled the statute of limitations periods. (Docket No. 75 at 1.) Plaintiff contends that the controlling question is when she could have reasonably discovered her claims against Jones and Stokes, which she maintains did not occur until recently.

The statute of limitations is an affirmative defense, for which Defendants bear the burden of proof. *Jodway v. Orlans, PC*, 759 F. App'x 374, 379 (6th Cir. 2018) For that reason, determination of the timeliness – or futility – of claims on statute of limitations grounds must be limited to whether "the allegations in the complaint affirmatively show that the claim is time-barred." *Id.* (quoting *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013)).

---

2011) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). *See also* 5B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1357 (3d ed. supp. Apr. 2023) ("Although district courts primarily consider the allegations in the complaint when deciding a Federal Rule 12(b)(6) motion to dismiss, courts may consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; these items may be considered by the district judge without converting the motion into one for summary judgment.").

A. **Section 1983 Claim**

As a preliminary matter, the parties agree that the statute of limitations for a cause of action under § 1983 is one year. *See Dibrell v. City of Knoxville, Tenn.*, 984 F.3d 1156, 1161 (6th Cir. 2021) (explaining that, because § 1983 does not include a statute of limitations, Tennessee's one-year personal injury tort statute of limitation is used); *Porter v. Brown*, 289 F. App'x 114, 116 (6th Cir. 2008) (Sixth Circuit "has long made clear that the limitations period for § 1983 actions arising in Tennessee is the one-year limitations provision found in Tenn. Code. Ann. § 28-3-104(a)"). What they dispute is the date on which the limitations period began to run. Although the limitations period is determined by state law, the accrual of the limitations period – that is, the date the limitations period was triggered – is a question of federal law. *Dibrell*, 984 F.3d at 1162; *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). *See also Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("While we have never stated so expressly, the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law.") (emphasis in original).

Generally, courts determine the accrual date of a claim by asking "what event should have alerted the typical lay person to protect his or her rights." *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005) (quoting *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548 (6th Cir. 2000)). The Sixth Circuit has long held that the so-called "discovery rule" applies to the accrual of § 1983 claims; that is, that a § 1983 "federal civil rights claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015) (quoting *Roberson*, 399 F.3d at 794). As the Sixth Circuit has stated:

> A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence. In this objective inquiry, courts look to what event should have alerted the typical lay person to protect his or her rights.

At that point, the plaintiff has a complete and present cause of action, such that he can file suit and obtain relief.

*Id.* (internal quotation marks and citations omitted). *See also See Patterson v. Chrysler Grp., LLC*, 845 F.3d 756, 763–64 (6th Cir. 2017) ("Under the discovery rule, the limitations period begins to run when the plaintiff discovers, or with due diligence should have discovered, the injury that is the basis of the action.") (internal quotation marks and citation omitted; *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007) ("[I]n determining when the cause of action accrues in § 1983 cases, we look to the event that should have alerted the typical lay person to protect his or her rights.") (internal quotation marks and citations omitted).

In contrast, the "standard" accrual rule for federal claims starts the limitations period "when the plaintiff has a complete and present cause of action" that can be raised in court. *Dibrell*, 984 F.3d at 1162 (quoting *Rotkiske v. Klemm*, 140 S.Ct. 355, 360 (2019)). In *Dibrell*, the Sixth Circuit addressed the Supreme Court's distinction between the "standard" rule and the "discovery" rule, stating that while the Supreme Court begins its accrual analysis in § 1983 actions with the standard rule "that a claim accrues when the plaintiff has a complete cause of action[,]" the Sixth Circuit's § 1983 caselaw "by contrast, has started the accrual analysis with the competing discovery rule: that the claim accrues when the plaintiff knows of, or should have known of, that cause of action." *Id.* The *Dibrell* court considered whether that caselaw "warrant[ed] reconsideration in light of the Supreme Court's recent teachings" but did not resolve the question, finding that the plaintiff's claim accrued on the same date under either theory. *Id.*

The Sixth Circuit recently reconfirmed that the discovery rule applies to claims based on federal statutes, like § 1983, that do not contain their own statute of limitations. *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 701 (6th Cir. 2022), *cert. denied sub nom. The Ohio State Univ. v. Steve Snyder-Hill*, 143 S. Ct. 2659 (2023). Although *Snyder-Hill* involved application of the

12

discovery rule to a case under Title IX which, like § 1983, does not contain its own statute of limitations, the Sixth Circuit made clear that its holding applies equally to claims under § 1983. *Id.* at 698 (noting that the application of the discovery rule in the § 1983 context guided the court's analysis). The Sixth Circuit also characterized as *dicta* its "speculation" in *Dibrell* that *Rotkiske* might prompt reconsideration of the discovery rule in Section 1983 cases. *Id.* at 700. *See also Reguli v. Ross*, No. 3:22-cv-00896, 2023 WL 6129503, at *8 n.5 (M.D. Tenn. Sept. 19, 2023), *appeal docketed*, No. 23-5925 (6th Cir. Oct. 19, 2023).

Here, the Court finds that Plaintiff's claims under § 1983 are untimely under the discovery rule for which she advocates.[10] As the Sixth Circuit noted, "the Supreme Court has 'been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock.'" *Guy v. Mercantile Bank Mortg. Co.*, 711 F. App'x 250, 253 (6th Cir. 2017) (quoting *Rotella v. Wood*, 528 U.S. 549, 555-56 (2000)). In other words, it is the plaintiff's knowledge that an injury occurred and not the discovery of other facts that begins the statute-of-limitations clock. *See DeShetler v. FCA US, LLC*, 790 F. App'x 664, 670 (6th Cir. 2019) (noting Supreme Court's focus on injury in applying discovery dule, "even if considerable enquiry and investigation may be necessary" to discover the other elements) (quoting *Rotella*, 528 U.S. at 555-56) (cleaned up). *See also Patterson*, 845 F.3d at 763–64; *Amini v. Oberlin Coll.*, 259 F.3d 493, 499-500 (6th Cir. 2001) (holding that "proper focus for purposes of determining the commencement of the . . . limitations period is on the discriminatory act itself" and not "the facts that led [the plaintiff] to suspect discrimination"); *Ruiz-Bueno v. Maxim Healthcare Servs., Inc.*, 659 F. App'x 830, 834 (6th

---

[10] Some of Plaintiff's arguments suggest that she might, instead, be relying on a standard accrual rule; that is, that she did not have a complete and present § 1983 cause of action against Jones and Stokes until she was aware of their alleged wrongdoing. For the reasons discussed, the Court follows the Sixth Circuit's direction to apply the discovery rule to Plaintiff's § 1983 claims.

Cir. 2016) (statute of limitations is not tolled while a plaintiff attempts to identify the correct defendants) (citing *Dowdy v. Prison Health Servs.*, 21 F. App'x 433, 435 (6th Cir. 2001)).

The alleged injury at issue here is the violation of Mr. Twilley's rights under the Eighth and Fourteenth Amendments (for which Plaintiff seeks redress as his next of kin) due to Jones and Stokes's alleged failure to "protect [him] from violence at the hands of other prisoners and to ensure his reasonable safety while exercising the traditional state function of imprisoning inmates." (Docket No. 67-1 at ¶ 125.) Applying the discovery rule, Plaintiff learned of the injury on March 28, 2022, the date that Mr. Twilley was killed. Plaintiff was clearly aware of the injury having occurred and was therefore put on inquiry to identify the proper defendants. *Dowdy*, 21 F. App'x at 435. Further, Plaintiff's original complaint, to which she appended incident reports specifying the involvement of Jones and Stokes in the circumstances of Mr. Twilley's death (Docket No. 1-2 at 9-11), reveals that she was aware of these potential defendants within the statute of limitations.

Plaintiff argues that a different discovery rule under Tennessee state law applies and tolls the statute of limitations. She points to the discovery rule set forth in *Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 463 (Tenn. 2012), in which the Tennessee Supreme Court stated:

> Under the current discovery rule, a cause of action accrues and the statute of limitations begins to run not only when the plaintiff has actual knowledge of a claim, but also when the plaintiff has actual knowledge of "facts sufficient to put a reasonable person on notice that he [or she] has suffered an injury as a result of wrongful conduct." *Carvell v. Bottoms*, 900 S.W.2d 23, 29 (Tenn. 1995) (quoting *Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994)). This latter circumstance is variously referred to as "constructive notice" or "inquiry notice." Quoting the Iowa Supreme Court, we have explained that inquiry notice "charges a plaintiff with knowledge of those facts that a reasonable investigation would have disclosed. . . . [O]nce a plaintiff gains information sufficient to alert a reasonable person of the need to investigate 'the injury,' the limitation period begins to run." *Sherrill v. Souder*, 325 S.W.3d at 593 n. 7 (quoting *Rathje v. Mercy Hosp.*, 745 N.W.2d 443, 461 (Iowa 2008)); *see also Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996) (defining inquiry notice as the "notice which a plaintiff would have possessed after due investigation").

14

*Id.* at 459 (footnotes omitted).

Plaintiff argues that she did not know of Jones and Stokes's wrongful conduct until recently, and therefore the statute of limitations was only recently triggered under *Redwing*. She states that Defendants did not identify Jones or Stokes until February 8, 2024 when they supplemented their initial disclosures. (Docket No. 68 at 2.) She seeks to add them as defendants "based on newly-discovered evidence of their tortious conduct provided to the Plaintiff by former CoreCivic employee Monica Marsh in January 2024." (*Id.* at 3.) Ms. Marsh previously worked at TTCC, though Plaintiff claims that she was not aware of Ms. Marsh's "identity [as] a critical firsthand witness" until December 27, 2023 when Plaintiff received staff rosters from TDOC that included Ms. Marsh.[11] In her declaration, Ms. Marsh states that she did a "shift change" with Jones on March 28, 2022, the date of the incident. (*Id.* at ¶ 5.) She then states, "Because CO Jones improperly let inmates pod-hop, Twilley was murdered." (*Id.* at ¶ 17.) However, Ms. Marsh provides no other statements regarding Jones' alleged allowance of other inmates into Mr. Twilley's pod. With respect to Stokes, Ms. Marsh states that Stokes "put Twilley back into his pod" and then "left the building." (*Id.* at ¶ 7.) Plaintiff also bases her argument regarding her recent discovery of Jones and Stokes's conduct on a document produced by Defendants on February 8, 2024 that allegedly "show[s] that one of the inmates who murdered Mr. Twilley was housed in a different pod when he participated in Mr. Twilley's murder." (Docket No. 68 at 2.) The referenced document is a "Cell/Bed Assignment" log for Dashawn Lytle with dates ranging from August 9, 2021 to March 30, 2022. (Docket No. 68-3 at 6.)

---

[11] Ms. Marsh confusingly states in her declaration that she "worked at [TTCC] from approximately August 2022 through June 2023" but also that she "came in on March 28, 2022." (Docket No. 68-4 at ¶¶ 2, 5.) The Court assumes that Ms. Marsh began work at TTCC prior to August 2022 and this date is a typographical error.

15

The Court is unpersuaded that by Plaintiff's arguments that *Redwing* and the circumstances she recites demand a different determination of the proper accrual date of her § 1983 cause of action. First, the Supreme Court has made clear that "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace*, 549 U.S. at 388 (emphasis in original). Therefore, any difference between Tennessee's "discovery rule" and the "discovery rule" in § 1983 cases is of no consequence to the outcome here. Additionally, the fact that Plaintiff did not discover until December 2023 or January 2024 that Johnson and Stokes took particular actions that she alleges are in violation of the Eighth and Fourteenth Amendments does not obviate the fact that Plaintiff knew about the injury on March 28, 2022, which precludes the untimely addition of Jones and Stokes as defendants under the discovery rule as applied in § 1983 cases. *See Johnson*, 777 F.3d at 843 (§ 1983 federal civil rights claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action") (quoting *Roberson*, 399 F.3d at 794); *DeShetler*, 790 F. App'x at 670 (citing *Rotella*, 528 U.S. at 555–56) (noting that the discovery rule applies only to knowledge of the injury, "even if considerable enquiry and investigation may be necessary to discover the other elements").

Further, even under Tennessee law, the application of the discovery rule urged by Plaintiff does not support her requested amendment. As the Tennessee Supreme Court stated in *Redwing*, Plaintiff "gain[ed] sufficient information to alert a reasonable person of the need to investigate 'the injury'" on March 28, 2022, which means that this is the date on which the limitations period began to run. 363 S.W.3d at 459. Although *Redwing* is inapplicable to the accrual of a § 1983 claim, the Court finds that its approach to accrual would also support a determination that the statute of limitations period began to run on March 28, 2022, and that Plaintiff's requested amendment to add Jones and Stokes is time-barred.

16

Moreover, as pointed out by Defendants, Plaintiff knew that Jones and Stokes had knowledge of the circumstances that underlie Plaintiff's claims. Notably, Plaintiff attached to her complaint incident reports that both Jones and Stokes completed on March 28, 2022 regarding Mr. Twilley's death. (Docket No. 1-2 at 9–11.) Plaintiff argues that the attachment of these incident reports is irrelevant because the reports do not reveal Jones and Stokes' alleged misconduct. For example, Plaintiff states that Jones does not mention in his incident report that he "improperly allowed one of Mr. Twilley's murderers – who was housed in a different pod – into Mr. Twilley's pod before the inmate killed him." (Docket No. 75 at 2.)

But that is not the operative question. The controlling question under Sixth Circuit law is not when Plaintiff discovered a defendant's wrongful conduct, but when Plaintiff discovered the *injury*. *Patterson*, 845 F.3d at 763–64. Or, put another way, the controlling question is when Plaintiff should have discovered a potentially actionable injury through the exercise of reasonable diligence, which is determined by "what event should have alerted the typical lay person to protect his or her rights." *Johnson*, 777 F.3d at 843 (citations omitted). Similarly, under *Redwing*, the question is when Plaintiff had sufficient information to be on alert that she would need to investigate the *injury*. The answer to this question – however stated – is March 28, 2022.

Nevertheless, Plaintiff argues that the facts evidencing Jones and Stokes's alleged wrongful conduct were "concealed from Plaintiff" (Docket No. 75 at 3), which is essentially a tolling argument. Having borrowed Tennessee's statute of limitations for the § 1983 claim, the Court applies the state's tolling statute, "as long as the result is not inconsistent with federal law or policy." *Id.* at 845. "Tennessee, unlike many other states and the federal courts, does not recognize the doctrine of equitable tolling in civil cases." *Pike v. United States*, 868 F.Supp.2d 667, 682

(M.D. Tenn. 2012) (citing *Redwing*, 363 S.W.3d at 460–61). Tennessee does recognize the doctrine of fraudulent concealment in civil matters. *Id.*[12]

Under Tennessee law, "the doctrine of fraudulent concealment applies … to circumstances in which the defendant engages in conduct intended to conceal the identity of the person or persons who caused the plaintiff's injury from the plaintiff." *Id.* (quoting *Redwing*, 363 S.W.3d at 462) (alteration in original). To invoke tolling due to fraudulent concealment, a plaintiff must show four elements:

(1) The defendant affirmatively concealed the plaintiff's injury or the identity of the wrongdoer or failed to disclose material facts regarding the injury or the wrongdoer despite a duty to do so;

(2) The plaintiff could not have discovered the injury or the identity of the wrongdoer despite reasonable care and diligence;

(3) The defendant knew that the plaintiff had been injured and the identity of the wrongdoer; and

(4) The defendant concealed material information from the plaintiff by withholding information or making use of some device to mislead the plaintiff in order to exclude suspicion or prevent inquiry.

*Id.* "The heightened pleading standard of Civil Rule 9(b) applies to fraudulent concealment, just as it applies to the fraud itself. That means the plaintiff must state with particularity the facts showing [s]he satisfied the exception, including [her] own diligence." *Miller v. Shults*, No. 3:19-CV-308-TAV-DCP, 2021 WL 2168952, at *5 (E.D. Tenn. May 27, 2021) (quoting *Chunn v Se. Logistics, Inc.*, 794 F. App'x 475, 477 (6th Cir. 2019)).

---

[12] *See also Dowdy v. Prison Health Servs.*, 21 F. App'x 433, 435 (6th Cir. 2001) ("The discovery rule can toll the running of the statute of limitations, but only when the plaintiff is not put on inquiry because she has no knowledge that an injury has occurred.") (citing *Potts v. Celetex Corp.*, 796 S.W.2d 678, 680 (Tenn. 1990)). Here, Plaintiff does not argue, nor could she, that she had no knowledge that an injury occurred. As discussed above, Mr. Twilley's death was the injury that put Plaintiff on notice of the need for further inquiry.

18

Plaintiff does not explicitly allege *fraudulent* concealment on the part of Defendants but argues that Defendants took steps to prevent her from discovering the extent of Jones' and Stokes' alleged tortious conduct. In particular, Plaintiff contends that CoreCivic withheld staffing rosters from her and "ha[d] its employees sanitize incident reports to omit tortious misconduct." (Docket No. 75 at 3–4.) With respect to the staffing rosters, the Court understands Plaintiff's frustration that she did not receive these discovery documents until recently. However, this delay alone does not constitute fraudulent concealment. Nor does Plaintiff offer any evidence that CoreCivic had employees sanitize records or otherwise fraudulently concealed information.

The simple argument that Plaintiff received certain allegedly incriminating information regarding actions taken by Jones and Stokes after the expiration of the statute of limitations is not enough to toll the statute of limitations, particularly when Plaintiff has failed to offer any evidence that Defendants *fraudulently* concealed such information from her. To the extent that Plaintiff contends she properly alleged fraudulent concealment on the part of Defendants to toll the applicable one-year statute of limitations, the Court finds that Plaintiff has failed to meet her heightened burden to establish that Defendants took steps to prevent her from discovery the injury at issue in this case. *Miller*, 2021 WL 2168952 at *5 (quoting *Redwing*, 363 S.W.3d at 462) ("However, plaintiff has not met his burden to establish fraudulent concealment. Even assuming that defendants concealed the video, plaintiff fails to identify how this fact supports any element of the claim. The doctrine does not toll the statute of limitations when any evidence is concealed at all; the concealed information must be regarding plaintiff's injury or the identity of the

wrongdoer.").[13] For these reasons, the Court finds no merit in Plaintiff's contention of fraudulent concealment by Defendants.

Finally, Plaintiff asserts that the Court "may not usurp the jury's role in determining when reasonable diligence would have resulted in the Plaintiff's discovery of the claims against Defendants Jones and Stokes." (Docket No. 75 at 1.) This argument is made with respect to the allegations that Plaintiff includes in her proposed amended complaint that she "could not reasonably have discovered the tortious conduct of Defendants Jones and Stokes—which was concealed from her—until December 2023, and she did not actually discover their tortious conduct until January 2024." (Docket No. 67-1 at ¶ 123.) She argues that, if Defendants disagree with her allegations regarding when she could have reasonably discovered Jones' and Stokes' allegedly tortious conduct, then such a disagreement "would present a *factual* dispute, which is not suitable for resolution on any sort of motion to dismiss and cannot lawfully be dispensed with as futile as a result." (Docket No. 68 at 9 n.1.) To support this assertion, Plaintiff cites to two cases: *Smith v. Hauck*, 469 S.W.3d 564, 572 (Tenn. Ct. App. 2015) ("The question of whether a plaintiff exercised reasonable care and diligence to discover his claims generally is a factual question for the finder of fact."), and *Luna v. St. Thomas Hosp.*, 272 S.W.3d 577, 581 (Tenn. Ct. App. 2007) ("The

_____

[13] Plaintiff's argument that Defendants fraudulently concealed the extent of Jones' and Stokes' alleged wrongdoing in connection with Mr. Twilley's death is not lost on the Court. Even if there were evidence that Defendants fraudulently concealed such information – which there is not – that is not the same as concealing the identity of a wrongdoer. As discussed above, Plaintiff knew from the incident reports that were undisputedly provided to her as early as May 2022 and were later appended to her complaint that Jones and Stokes had knowledge of the events surrounding Mr. Twilley's death. There was no concealment of their identity. Plaintiff offers no explanation for her lack of timely inquiry into Jones' and Stokes' involvement, if any, in Mr. Twilley's death. Plaintiff could certainly have requested early discovery in this case or to take early depositions of Jones and Stokes to obtain additional information about their alleged participation in the circumstances of Mr. Twilley's death.

determination of when a reasonable person should know that his injury was caused by some wrongful or negligent act is generally a question for the trier of fact."). These cases, however, rely on Tennessee state law that is inapplicable to a § 1983 claim. Accordingly, the Court finds Plaintiff's argument regarding the Court's ability to "determine[e] when reasonable diligence would have resulted in the Plaintiff's discovery of the claims against Defendants Jones and Stokes" to be unpersuasive with respect to Plaintiff's § 1983 claim.

For all of these reasons, the Court finds that Plaintiff's motion for leave to amend to assert § 1983 claims against Christopher Jones and Delores Stokes is facially time-barred and is therefore futile. Plaintiff's motion must therefore be denied to that extent.

### B. <u>Negligence Claim</u>

As a preliminary matter, there is no dispute that the statute of limitations for a cause of negligence is one year. Tenn. Code. Ann. § 28-3-104(a)(1)(A). However, what is again at issue is when Plaintiff's negligence claim accrued for purposes of starting the one-year statute of limitations clock. Because this is a claim under state law, the Court agrees with Plaintiff that the controlling "discovery rule" is the one set forth in *Redwing*, 363 S.W.3d at 459. Accordingly, for Plaintiff's negligence claim, "a cause of action accrues and the statute of limitations begins to run not only when the plaintiff has actual knowledge of a claim, but also when the plaintiff has actual knowledge of 'facts sufficient to put a reasonable person on notice that he [or she] has suffered an injury as a result of wrongful conduct.'" *Id.* (quoting *Carvell*, 900 S.W.2d at 29).

In her original complaint, Plaintiff focused on Defendants' negligence in allowing crowds of inmates to gather in Mr. Twilley's pod despite a prohibition on such gatherings. (Docket No. 1 at ¶¶ 82–87.) She alleged that this negligence "actually and proximately caused Mr. Twilley's death." (*Id.* at ¶ 87.) In her proposed amended complaint, Plaintiff seeks to allege that Jones and

Stokes, as well as the current Defendants (CoreCivic, Frink, McDavid, and Kaiser), were negligent because they allowed crowds of inmates to gather, but also because they knew that an inmate had a contraband knife and was permitted to enter Mr. Twilley's pod and because they knew that Mr. Twilley asked to go to a different pod before he was murdered. (Docket No. 67-1 at ¶¶ 170–71.) The injury that is at the center of the proposed negligence claim against Jones and Stokes is the same injury that is at the center of the existing negligence claim against the existing defendants – the death of Mr. Twilley on March 28, 2022.

Accordingly, for the same reasons detailed above with respect to the § 1983 claim, the Court finds – albeit under applicable state law principles – that Plaintiff's negligence claim against Jones and Stokes accrued and that the statute of limitations began to run on March 28, 2022, when Mr. Twilley was killed. It was on this date that Plaintiff had actual notice of her negligence claim and actual knowledge of facts sufficient to put a reasonable person on notice of an injury suffered as a result of wrongful conduct. *See Redwing*, 363 S.W.3d at 459.

As discussed above, Plaintiff argues that she was not aware of the wrongful conduct that underlies the new allegations of her proposed negligence claim because Defendants concealed the information. She argues that the "relevant question" is "when the Plaintiff knew of the facts establishing Jones' and Stokes' *wrongful conduct*." (Docket No. 75 at 2.) But that is incorrect. The "relevant question" is when Plaintiff knew of "facts sufficient to put a reasonable person on notice that he [or she] has suffered an injury as a result of wrongful conduct." *Redwing*, 363 S.W.3d at 459 (quoting *Carvell*, 900 S.W.2d at 29).

An opinion from the Tennessee Court of Appeals provides helpful guidance. In *Woodruff ex rel. Cockrell v. Walker*, the plaintiffs, a mother and her child, filed a health care liability action in September 2015 alleging that they suffered permanent injuries resulting from the defendants'

negligent care during the child's birth in June 2012. 542 S.W.3d 486, 489 (Tenn. Ct. App. 2017). In response to the complaint, the defendants filed a motion to dismiss based on expiration of the statute of limitations. *Id.* at 494. In response to the motion to dismiss, the plaintiffs sought to invoke the discovery rule against one defendant, Dr. Hoeldtke, because they alleged that they did not have information sufficient to alert them of Dr. Hoeldtke's wrongful conduct until March 2015. *Id.* at 495. The plaintiffs argued that Dr. Hoeldtke's deposition testimony, which was taken in May 2013, contradicted deposition testimony from another doctor, which was taken in March 2015. *Id.* They argued that their claims against Dr. Hoeldtke, therefore, did not accrue until March 2015 when they learned of Dr. Hoeldtke's wrongful conduct. *Id.*

In reviewing the record, the Tennessee Court of Appeals found that the trial court did not err in dismissing the plaintiffs' claims against Dr. Hoeldtke based on the one-year statute of limitations. The Court wrote:

> To determine the date on which the one-year statute of limitations began to run, we must ascertain when Plaintiffs' claims accrued. Generally, a cause of action accrues and the statute of limitations begins to run on the date when the injury occurs. *Vandergriff v. ParkRidge East Hosp.*, 482 S.W.3d 545, 556 (Tenn. Ct. App. 2015). However, … the statute of limitations period begins to run once the plaintiff has information sufficient to alert a reasonable person of the need to investigate the injury. *Sherrill*, 325 S.W.3d at 593 n.7 (quoting *Rathje v. Mercy Hosp.*, 745 N.W.2d 443, 461 (Iowa 2008)). Thus, the plaintiff is charged with knowledge of those facts that, in the exercise of reasonable care and diligence, she should have discovered. *Id.* at 594. Generally, whether a plaintiff exercised reasonable care and diligence in discovering the injury or wrongful conduct is a fact question for the jury to determine. *Wyatt v. A–Best Co.*, 910 S.W.2d 851, 854 (Tenn. 1995). In many cases, however, the facts material to a statute of limitations defense are not in dispute. *Young ex rel. Young v. Kennedy*, 429 S.W.3d 536, 558 (Tenn. Ct. App. 2013) (quoting *Cherry v. Williams*, 36 S.W.3d 78, 83 (Tenn. Ct. App. 2000)). When the undisputed facts demonstrate that the plaintiff knew, or in the exercise of reasonable care and diligence should have known, that he or she was injured as a result of the defendant's wrongful conduct, a judgment on the pleadings or dismissal of the claim is appropriate. *Robinson v. Baptist Mem'l Hosp.*, 464 S.W.3d 599, 609 (Tenn. Ct. App. 2014) (citations omitted).

* * *

In our view, the record conclusively establishes that Plaintiffs knew or should have
known that they were injured as a result of Dr. Hoeldtke's wrongful conduct on
June 21, 2012. Plaintiffs do not dispute that they were aware of their injuries on
that date. Additionally, Plaintiffs do not dispute that they were aware of Dr.
Hoeldtke's presence in the hospital room during Mother's labor on that date. Those
two facts alone were sufficient to alert a reasonable person of the need to investigate
any potential wrongful conduct by Dr. Hoeldtke.

*Id.* at 494–95.

Here, the Court makes a similar finding. Based on the allegations within the original
complaint, there is no dispute that Plaintiff was aware of the injury – the death of Mr. Twilley – on
March 28, 2022. (Docket No. 67-1 at ¶ 1.) There is also no dispute that Plaintiff knew that Jones
and Stokes were working at TTCC on that date and had information about Mr. Twilley's death, as
evidenced by Plaintiff's attachment of their incident reports to her original complaint. (Docket No.
1-2 at 9–11.)[14] These two facts alone – that the injury occurred on March 28, 2022 and that Jones
and Stokes were working at TTCC on that date and possessed information regarding Mr. Twilley's
death – were sufficient to put a reasonable person on notice of the need to investigate any potential
wrongful conduct by Jones and Stokes. Just as the Tennessee Court of Appeals did not focus its
inquiry on "when the Plaintiff[s] knew of the facts establishing [Dr. Hoeldtke's] wrongful
conduct," this Court will not focus its inquiry on "when the Plaintiff knew of the facts establishing
Jones' and Stokes' wrongful conduct."

As set forth by the Tennessee Court of Appeals in *Woodruff* and as Plaintiff correctly points
out, generally, whether a plaintiff exercised reasonable care and diligence in discovering the injury
or wrongful conduct is a fact question for the jury to determine. *Id.* at 495 (citing *Wyatt v. A–Best
Co.*, 910 S.W.2d 851, 854 (Tenn. 1995)). However, when the undisputed facts demonstrate that the

---

[14] As stated above, it is also undisputed that Defendants provided the incident reports to
Plaintiff in May of 2022.

plaintiff knew, or in the exercise of reasonable care and diligence should have known, that he or she was injured as a result of the defendant's wrongful conduct, a judgment on the pleadings or dismissal of the claim is appropriate. *Id.* (citing *Robinson v. Baptist Mem'l Hosp.*, 464 S.W.3d 599, 609 (Tenn. Ct. App. 2014)). Here, as detailed above, the Court finds that the undisputed facts as set forth in Plaintiff's pleadings demonstrate that Plaintiff knew that an injury occurred on March 28, 2022, when Mr. Twilley was killed, and that Jones and Stokes were in the area of the events that occurred on that date and had knowledge of the events. Those facts alone were sufficient to alert a reasonable person of the need to investigate any potential wrongful conduct by Jones and Stokes.

For all of these reasons, Plaintiff's negligence claim against Christopher Jones and Delores Stokes is time-barred and Plaintiff's motion for leave to amend to add Christopher Jones and Delores Stokes on that basis must be denied.

**2.     The Delay Caused by Plaintiff's Proposed Claims Against Jones and Stokes**

In addition to their futility arguments, Defendants also argue that Plaintiff's proposed amendments would "potentially" delay this matter because Jones and Stokes, as new defendants, would need the opportunity to serve written discovery and take depositions. (Docket No. 74 at 16.) Therefore, they argue, the deadline to complete fact discovery would need to be extended, which would create an unwarranted delay. (*Id.* at 16–17.) Plaintiff describes this argument from Defendants as "meritless." (Docket No. 75 at 6.) Plaintiff argues that amending the complaint to name the five inmate defendants – which Defendants do not oppose – would  delay the matter in the same way that the addition of Jones and Stokes would delay the matter; accordingly, the delay caused by adding Jones and Stokes is irrelevant. (Docket No. 75 at 6.)

The Court agrees with Plaintiff that her proposed amendment to name Jones and Stokes as defendants would cause no more delay than her proposed amendment to name the five inmate defendants. Because the Court finds that Plaintiff's proposed claims against Jones and Stokes are futile, the Court need not resolve the question of delay to the case management schedule.

Nevertheless, the Sixth Circuit has held that "[d]elay that is not intended to harass the defendant is not in itself a permissible reason to refuse leave to amend.*" Parmer v. Globe Industries, Inc.*, 914 F.2d 257 (Table), at *3 (6th Cir. 1990) (citing *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982)). Rather, "the party opposing a motion to amend must make some significant showing of prejudice to prevail." *Security Ins. Co. of Hartford v. Tucker & Assoc.*, 64 F.3d 1001, 1009 (6th Cir. 1995). When considering the issue of prejudice, a court must ask whether allowing the amendment would "require the opponent to expend significant additional resources to conduct discovery or prepare for trial" or cause considerable delay in resolving the dispute. *Phelps v. McClennan*, 30 F.3d 658, 662-63 (6th Cir. 1994) (citations omitted). *See also Dassault Systemes, SA v. Childress*, 663 F.3d 832, 842 (6th Cir.) (delay and increased costs from having to litigate a dispute are not sufficient prejudice). The Court finds no such circumstances here.

Similarly, because Plaintiff's request for leave to amend is properly denied on futility grounds, the Court need not discuss whether there are any other bases for denial, such as bad faith or repeated deficient amendments. Nevertheless, the Court does not find that Plaintiff has acted in bad faith or with dilatory motive in seeking leave to amend and denies her requested amendment to add Jones and Stokes as defendants against whom she asserts § 1983 and negligence claims solely on grounds of futility.

### III. CONCLUSION

Based on the foregoing, Plaintiff's motion for leave to file a first amended complaint (Docket No. 67) IS **GRANTED IN PART and DENIED IN PART**. Plaintiff is permitted to amend her complaint to do the following:

1. <u>Add five inmate defendants</u>: Add five new defendants who were inmates at TTCC at the time of Mr. Twilley's death – Keldrick Taylor, DaShawn Lytle, Donald Peoples, Demetrius Risner, and Dontavious Hendrix – and allege their liability under a new Claim 5 (battery).

2. <u>Revise § 1983 claim and *Monell* claim re prison doors</u>: Add a new allegation against Defendants Frink, McDavid, and Kaiser under Claim 1 (§ 1983 claim) and against Defendant CoreCivic under Claim 2 (*Monell* liability) for "failure to protect and negligence liability, and corresponding *Monell* liability, relating to the Defendants' defective prison doors based on new information that the Plaintiff only received weeks ago."

3. <u>Add new factual allegations</u>: Add new factual allegations related to the above new defendants and allegations.

Otherwise, Plaintiff's request to amend her complaint to add a § 1983 claim and a negligence claim against Christopher Jones and Delores Stokes is **DENIED**.

Plaintiff may, within **fourteen (14) days** of the date of this Order, file an amended complaint that includes the permitted amended allegations and claims. Plaintiff is cautioned that the amended complaint must be limited to the amendments permitted by this Order. Failure to do so may result in adverse consequences. *See* Fed. R. Civ. P. 16(f).

It is SO ORDERED.

BARBARA D. HOLMES
United States Magistrate Judge