## UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| Kelly L. Stephens<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: June 09, 2025

Ms. Donna L. Green
Mr. Matthew W. Kubicek
Mr. David Wickenheiser
Office of the Attorney General of Tennessee
500 Dr. Martin L. King Boulevard, Suite 3214
Nashville, TN 37219

Mr. Daniel Alexander Horwitz
Ms. Sarah Lynne Martin
Horwitz Law
4016 Westlawn Drive
Nashville, TN 37209

Re: Case No. 24-5707, *Lakenya McGhee-Twilley v. CoreCivic of Tennessee, LLC*
Originating Case No. : 3:23-cv-00077

Dear Counsel,

The Court issued the enclosed opinion today in this case.

Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Sincerely yours,

s/Cathryn Lovely
Opinions Deputy

cc: Ms. Lynda M. Hill

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0287n.06

Case No. 24-5707

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jun 09, 2025
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| LAKENYA MCGHEE-TWILLEY, ) | |
| Plaintiff-Appellant, ) | |
| ) | |
| v. ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| CORECIVIC OF TENNESSEE, LLC, ) | |
| Defendant, ) | |
| ) | OPINION |
| JASON LAWSON; TENNESSEE DEPARTMENT OF CORRECTION, ) | |
| Movants-Appellees ) | |

Before: CLAY, READLER, and DAVIS, Circuit Judges.

READLER, J., delivered the opinion of the court in which DAVIS, J., concurred. CLAY, CLAY, J. (pp. 15–17), delivered a separate opinion concurring in the judgment in part.

**CHAD A. READLER, Circuit Judge.** CoreCivic of Tennessee operates a series of private prisons, the conditions at which have been the subject of numerous lawsuits. At times, those disputes have taken on an ancillary purpose. Following settlement of the suits, various parties have sought access to "documents . . . produced during discovery" in the now-settled litigation. *Grae v. Corr. Corp. of Am. (Grae I)*, 57 F.4th 567, 568 (6th Cir. 2023) (order) (noting the "quest for documents" related to CoreCivic's operations); *Grae v. Corr. Corp. of Am. (Grae*

No. 24-5707, *McGhee-Twilley v. CoreCivic of Tenn., LLC*

*II)*, 134 F.4th 927, 930–31 (6th Cir. 2025) (describing intervenor's successful appeal regarding its attempt to obtain similar documents).

Today's case echoes these themes. Having settled her 42 U.S.C. § 1983 lawsuit against CoreCivic, Lakenya McGhee-Twilley now asks that we revisit confidentiality designations on discovery documents third parties produced during the litigation. Because McGhee-Twilley's settlement mooted any case or controversy, we dismiss.

## I.

CoreCivic's business is running private prisons. The company's purported failure to properly staff those facilities has inspired lawsuits from disillusioned shareholders as well as family members of affected inmates. *See, e.g.*, *Grae I*, 57 F.4th at 568–69. This case falls into the latter category.

McGhee-Twilley's son was murdered by fellow inmates at CoreCivic's Trousdale Turner Correctional Center, a tragedy she attributes to severe understaffing at the Center. On that basis, she sued CoreCivic under § 1983 and state law. She later settled with the company, stipulating to the dismissal of her complaint with prejudice.

Despite that settlement, McGhee-Twilley aims to keep her lawsuit alive, now as an effort to make public documents produced during discovery by two non-parties: District Attorney Jason Lawson and the Tennessee Department of Corrections (TDOC). To understand this dispute's origins, turn back to a protective order entered by the district court by agreement of both McGhee-Twilley and CoreCivic. The order authorized anyone who produced a document during discovery to mark it as "CONFIDENTIAL," at which point it presumptively qualified for protection under Rule 26(c). *See* Agreed Protective Order Against Unauthorized Use or Disclosure of Confidential Info. 1, R. 34, PageID#1939; *see also* Fed. R. Civ. P. 26(c); *Seattle Times Co. v. Rhinehart*, 467

U.S. 20, 36 (1984) (noting trial court's "broad discretion" to determine the "degree of protection" afforded documents during "the discovery process"). A party who disagreed with such a confidentiality designation could use ordinary "discovery dispute . . . procedures" to contest before the magistrate judge the appropriateness of Rule 26(c) protection. Agreed Protective Order, *supra*, at 6, R. 34, PageID#1944.

Utilizing those procedures, McGhee-Twilley challenged the confidentiality of documents Lawson and TDOC produced under subpoena. But before that issue could be resolved, McGhee-Twilley and CoreCivic notified the court that they had settled McGhee-Twilley's suit, with the parties agreeing to an across-the-board dismissal. The district court accordingly deemed the case "administratively closed" as the parties papered their agreement. Order 1, R. 97, PageID#6002. A few weeks later, as the settlement process played out, McGhee-Twilley challenged Rule 26(c) protection as to more of Lawson's and TDOC's documents. The magistrate judge rejected her effort in light of the prior administrative closure of the case. McGhee-Twilley sought district court review of this order. Around the same time, she agreed to the filing of a stipulation of dismissal. The district court accepted her stipulation, dismissed the case with prejudice, and directed the clerk to close the file.

McGhee-Twilley filed a notice to contest the entry of final judgment because there remained pending her unresolved motions regarding Lawson's and TDOC's confidentiality designations. The notice, however, was not acted upon by the district court. McGhee-Twilley likewise filed a notice of appeal from the dismissal order, prompting our consideration of her case.

## II.

Because McGhee-Twilley settled her suit, she mooted any "case[]" or "controvers[y]" that once existed. *See* U.S. CONST. art. III, § 2. Accordingly, we lack subject-matter jurisdiction to

3

No. 24-5707, *McGhee-Twilley v. CoreCivic of Tenn., LLC*

decide her appeal. *See Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 3–5 (2023) (ordering dismissal for lack of jurisdiction because plaintiff mooted her case through voluntary dismissal).

    A. A case becomes moot when the parties no longer have "a personal stake" or "concrete interest" "in the outcome of the litigation" such that we cannot "grant any effectual relief" to whoever prevails. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160–61 (2016) (citation modified). This skin-in-the-game requirement has yielded the long-held understanding that voluntary dismissal, including after a settlement, generally renders a case moot. *Acheson Hotels*, 601 U.S. at 3–5; *Int'l Union, UAW v. Dana Corp.*, 697 F.2d 718, 721 (6th Cir. 1983) (en banc); *Nashville, Chattanooga & St. Louis Ry. Co. v. United States*, 113 U.S. 261, 266 (1885) ("[A] decree . . . rendered by consent, is always affirmed, without considering the merits of the cause.").

    Instructive here is our recent decision in *Garton v. Crouch*, No. 23-6002, 2024 WL 3569520 (6th Cir. July 29, 2024). We deemed the dispute there moot when an appellant in identical straits as McGhee-Twilley continued to litigate discovery issues after settling his claims. 2024 WL 3569520, at *3–4. The similarities between that case and this one bear emphasis. Both plaintiffs sued under § 1983. *Id.* at *1. Both conducted discovery under a protective order. *Id.* Both settled their claims, stipulating to dismissal with prejudice. *Id.* And finally, following their respective settlements, both sought to revisit discovery disputes relating to the protective order. *Id.*

    *Garton* dismissed the ensuing appeal on mootness grounds. By previously settling the case, we explained, the plaintiff had "bargain[ed] away any legally cognizable interest" in using the documents at issue to support the litigation. *Id.* at *4 (citation modified). Due to the settlement, in other words, "there [we]re now no live claims associated with" the documents, meaning the case had become moot. *Id.*

4

No. 24-5707, *McGhee-Twilley v. CoreCivic of Tenn., LLC*

That logic applies with equal force here. McGhee-Twilley sued CoreCivic, asserting various claims arising from the death of her son. To support her claims, she sought relevant documents held by Lawson and TDOC and later challenged those documents' confidentiality designations. *Cf.* Fed. R. Civ. P. 26(b)(1) (allowing parties to "obtain discovery regarding any . . . matter that is relevant to any party's claim or defense"). But she then settled the claims asserted in her complaint. As those now-settled claims were the sole basis for pursuing documents held by Lawson and TDOC, *see id.*, McGhee-Twilley's settlement "extinguished" her "stake in the outcome of th[e] disputed motion[s]," *Garton*, 2024 WL 3569520, at *4. As a result, her appeal is not an "actual controversy" we have power to decide. *Campbell-Ewald Co.*, 577 U.S. at 160 (citation omitted).

B. McGhee-Twilley pushes back on several fronts.

1. She begins with a jurisdictional point of her own. According to McGhee-Twilley, her appeal falls outside of our statutory imprimatur due to the "decision[]" below's lack of "final[ity]," 28 U.S.C. § 1291, a reality that compels us to "remand" her case to the district court "with instructions to adjudicate" her pending motions, Pl.-Appellant's Am. Principal Br. 36, ECF No. 13 [hereinafter Appellant's Br.]. As we "can address jurisdictional issues in any order we choose," we need not linger on the matter, having already explained why McGhee-Twilley's case is moot. *Acheson Hotels*, 601 U.S. at 4; *see also Garton*, 2024 WL 3569520, at *2–4 (addressing finality and mootness in turn).

And even assuming McGhee-Twilley's finality concerns have merit, *but see Klein by Klein v. Caterpillar, Inc.*, No. 23-1762, 2024 WL 1574672, at *2 (6th Cir. Apr. 11, 2024) (recognizing that a district court's dismissal of an entire case with prejudice does not become nonfinal simply because of an "omission" in failing to substantively address one of the pending claims), her desire

5

No. 24-5707, *McGhee-Twilley v. CoreCivic of Tenn., LLC*

for a remand would not, in any event, fall within our judicial power. We are authorized to "remand" and give instructions as to "further proceedings" in the district court only when a case is "lawfully brought before [us] for review." 28 U.S.C. § 2106; *cf.* Adam Crews, *The Mandate Rule*, 73 S.C. L. Rev. 263, 280–81 (2021) (describing § 2106 as the only source of appellate-court authority to instruct district court actions). A non-final district court decision does not so qualify. 28 U.S.C. § 2106; *see id.* § 1291. Accordingly, in the case of a premature appeal, we may not "affirm, modify, vacate, set aside or reverse" a district court ruling. *Id.* § 2106. Nor do we have license to "remand" with any "direct[ions]" or "require[ments]" for that court. *Id.*; *Pemberton v. State Farm Mut. Auto. Ins.*, 996 F.2d 789, 793 n.7 (5th Cir. 1993). Instead, we must simply "dismiss the appeal" itself "for lack of jurisdiction." *E.g.*, *United States v. Any & All Radio Station Transmission Equip.*, 204 F.3d 658, 668 (6th Cir. 2000) (citation modified). But, again, as McGhee-Twilley's case is now moot, we rest our jurisdictional ruling on that settled basis.

    2. Turning to the merits of our mootness ruling, McGhee-Twilley contends that, unlike Garton, she maintains post-settlement "legal interest[s]" in the discovery documents at issue, meaning her case is not moot. *See Garton*, 2024 WL 3569520, at *4. Recognizing that "the mere denial of information is insufficient" on this front, *Grae I*, 57 F.4th at 569 (citing *TransUnion, LLC v. Ramirez*, 594 U.S. 413, 441–42 (2021)), McGhee-Twilley cites two purported "adverse effects" tied to her not having the documents, which, she believes, keep alive her Article III controversy, Appellant's Br., *supra*, at 40 (quoting *Grae I*, 57 F.4th at 570).

    a. Consider first McGhee-Twilley's desire to "keep a watchful eye on the workings of [the] public agencies who failed her son," including by "monitor[ing] [TDOC's] workings and participat[ing] more effectively in the process of overseeing" TDOC and CoreCivic. *Id.* (citation modified). We do not doubt McGhee-Twilley's sincerity in this respect. But even assuming these

6

No. 24-5707, *McGhee-Twilley v. CoreCivic of Tenn., LLC*

broadly stated interests in oversight and monitoring are sufficiently "concrete" and "personal," *Campbell-Ewald Co.*, 577 U.S. at 160–61 (citations omitted), McGhee-Twilley does not explain how removing the confidentiality designations would allow her to oversee or monitor these agencies. To satisfy that obligation, she must show us why winning this discovery dispute would "make a difference to" her "interests" in oversight. *Garton*, 2024 WL 3569520, at *4 (emphasis omitted) (citation omitted). She makes no attempt to do so. At best, her briefing merely substitutes the parties' names into quotes from Supreme Court informational-injury precedents, without elaboration. Appellant's Br., *supra*, at 40 (first quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978); and then quoting *Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 449 (1989)). "[M]ere speculation," "assertion," or "assumptions" cannot establish a legal interest of constitutional proportions. *Cf. Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410–11 (2013). Nor is it our place to "put flesh on [the] bones" of an "argument" "mention[ed]" in such a "skeletal way." *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 946 (6th Cir. 2022) (citation omitted).

Perhaps, as McGhee-Twilley emphasizes, TDOC and Lawson, as the parties asserting mootness, "bear[] the burden to establish that [the] once-live case has become moot." *West Virginia v. EPA*, 597 U.S. 697, 719 (2022); *accord Kentucky v. Yellen*¸ 54 F.4th 325, 340 n.10 (6th Cir. 2022). Even so, TDOC and Lawson have made the needed "affirmative showing" of mootness, *Kentucky*, 54 F.4th at 340 n.10, by directing our attention to the district court's docket, which reflects that McGhee-Twilley voluntarily dismissed all of her "once-live" claims with prejudice, *see West Virginia*, 597 U.S. at 719, an event that, save for in extraordinary circumstances, snuffs out any Article III interest, *see Acheson Hotels*, 601 U.S. at 3–5; *Garton*, 2024 WL 3569520, at *2–3 (holding that defendants showed mootness merely by pointing out the settlement and stipulated dismissal).

7

No. 24-5707, *McGhee-Twilley v. CoreCivic of Tenn., LLC*

That leaves McGhee-Twilley to "provide evidence," *Kentucky*, 54 F.4th at 341, "demonstrat[ing]" the unusual circumstance that would allow her to remain in federal court after disclaiming the very "legally cognizable interest[s]" that got her there, *Garton*, 2024 WL 3569520, at *4. To do so, she must "furnish[] . . . proof," not mere assertion, that supports her "theory of injury." *Kentucky*, 54 F.4th at 341. Indeed, we typically require a party asserting a new theory of Article III injury for the first time on appeal to support that theory with competent "evidence" such as "affidavits" "attached to its opening brief." *Tenn. Republican Party v. SEC*, 863 F.3d 507, 517 (6th Cir. 2017) (citation modified) (direct review of agency action); *Wittman v. Personhuballah*, 578 U.S. 539, 545 (2016) (intervenor on appeal). Yet McGhee-Twilley has provided neither "affidavits" nor any "other evidence" to demonstrate how her interest in oversight is injured by not having the documents at issue. *See Wittman*, 578 U.S. at 545 (citation modified). Her threadbare argument on this front fails to keep her case alive.

b. McGhee-Twilley also seeks to undo the confidentiality designations to allow her to submit the documents at issue to the Department of Justice in support of its investigation of the Trousdale Turner Correctional Center. Here too, she fails to stave off mootness, in three respects.

i. First, McGhee-Twilley has "failed to provide evidence that [she] intend[s] to" participate in the DOJ investigation. *Kentucky*, 54 F.4th at 341. As before, her briefing is unadorned with any "affidavits or other evidence" to prove up this alleged constitutional injury besides a single URL indicating the mere existence of the DOJ investigation. *Wittman*, 578 U.S. at 545 (citation modified). On these points, we have nothing but her attorney's assertion. That is insufficient "proof," *Kentucky*, 54 F.4th at 341, to "demonstrate a legally cognizable interest in the dispute," *Garton*, 2024 WL 3569520, at *4.

8

No. 24-5707, *McGhee-Twilley v. CoreCivic of Tenn., LLC*

    ii.  Second, as *Garton* noted, avoiding mootness requires a "personal" "stake" in the litigation, meaning McGhee-Twilley "cannot anchor h[er] asserted interest to the general public's interest" in a particular outcome. *Id.* at *4 n.3. Yet the desire to "participate in and support" a government investigation, Appellant's Br., *supra*, at 40, is not a "stake" "personal" to McGhee-Twilley for purposes of the mootness analysis, *Garton*, 2024 WL 3569520, at *4 n.3. After all, her 340 million fellow citizens—any of whom might move to intervene in her suit—could likewise claim such an interest, given their similar ability to submit the documents to the DOJ after removing them from Rule 26(c) protection. *See Grae I*, 57 F.4th at 568 (attempted intervention to obtain CoreCivic documents after a settlement); *Grae II*, 134 F.4th at 930 (same, successfully); *see also* Press Release, DOJ, Off. of Pub. Affs., Justice Department Announces Civil Rights Investigation into Conditions at Tennessee's Trousdale Turner Correctional Center (Aug. 20, 2024), https://perma.cc/4UET-LGWK (encouraging "[i]ndividuals with relevant information" to contact the DOJ). If McGhee-Twilley is correct, anytime the government initiates an investigation, it sparks an "actual controversy" (meriting resolution by a federal court) between anyone supportive of the investigation and anyone with relevant confidential information. *See Campbell-Ewald Co.*, 577 U.S. at 160 (citation omitted). Precedent says otherwise: a "generalized grievance" that "no more directly and tangibly benefits" the person asserting it "than it does the public at large" falls far outside the bounds of an Article III interest. *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013) (citation omitted).

    True, McGhee-Twilley had a strong interest in pursuing relief against CoreCivic in light of her son's death. Yet once she successfully settled that lawsuit, this deeply "personal" legal interest was extinguished, leaving her "stake" in the documents at issue no different from "the general public's." *Garton*, 2024 WL 3569520, at *4 n.3. Consider, for comparison's sake, the would-be

9

No. 24-5707, *McGhee-Twilley v. CoreCivic of Tenn., LLC*

intervenors in *Hollingsworth*. Because the intervenors had proposed the state constitutional amendment at issue, they played a "unique, special, and distinct role" different from other citizens during "the process of enacting the law." 570 U.S. at 706 (citation modified). But after the proposed amendment successfully became "a duly enacted" law, its promoters had no "role—special or otherwise—in" promoting the law, and thus no longer had any Article III interest in defending the law's constitutionality "distinguishable from the general interest of every citizen." *Id.* at 707. So too here. During litigation, McGhee-Twilley had a unique interest in using documents from Lawson and TDOC to hold CoreCivic responsible for her son's death. But she relinquished her claims via a triumphant settlement. At that point, her interest in any underlying discovery documents was merely that shared by countless "concerned bystanders" who might similarly want to "vindicat[e]" their "value interests" about the conditions at Trousdale Turner. *Id.* (citation omitted).

    iii. Finally, even if McGhee-Twilley's interest in facilitating the DOJ's access to these documents were "personal" to her, *Garton*, 2024 WL 3569520, at *4 n.3, it would still be an inadequate basis to stave off mootness for a different reason: the "relief" she seeks from this Court "would" not "make a difference" in that effort, *id.* at *3 (citation omitted). The mootness doctrine forbids federal courts from weighing in on disputes "which cannot affect the matter in issue." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (citations omitted) (also noting that a court decision must provide "effectual relief" (citation omitted)). It follows that a case in our Court becomes "moot" if the "appellant [does] not need any relief" from us to obtain the result she desires. *Cardona v. Power*, 384 U.S. 672, 674 (1966); *see also MSCI 2007-IQ16 Granville Retail, LLC v. UHA Corp.*, 660 F. App'x 459, 461 (6th Cir. 2016) ("[I]f . . . a decision [becomes] unnecessary, the appeal will be dismissed as moot." (citation omitted)); *United States*

10

No. 24-5707, *McGhee-Twilley v. CoreCivic of Tenn., LLC*

*v. Woolen*, 25 F.2d 673, 675 (6th Cir. 1928) ("[A]s we consider a decision by us to be now unnecessary . . . [t]he question presented . . . has become moot . . . .").

Here, we cannot order "effectual relief" regarding McGhee-Twilley's request for documents when the DOJ already enjoys the ability to pursue the same relief. *Church of Scientology*, 506 U.S. at 12 (citation omitted). Note that the DOJ launched its Trousdale Turner investigation under the Civil Rights of Institutionalized Persons Act, which authorizes DOJ "access" "by subpoena . . . to any document, record, [or] material[] . . . relating to" that facility. 42 U.S.C. § 1997a-1(a). The disputed records produced by Lawson and TDOC appear to fall within this wide category, allowing the DOJ access to them. And in the unlikely event that the DOJ has not yet subpoenaed those entities, nothing in the protective order appears to prevent McGhee-Twilley from alerting it to do so. *See* Press Release, *supra* (inviting tips from the public).

In short, nothing in McGhee-Twilley's briefing suggests that the DOJ cannot obtain access to these documents through its broad subpoena power or that it is otherwise reliant on her to provide them. And in light of this more straightforward mechanism for "support[ing] the DOJ's pending investigation," Appellant's Br., *supra*, at 40, McGhee-Twilley "[does] not need any relief" here, *Cardona*, 384 U.S. at 674. That fact independently renders the case moot. *Id.*

3. Next, McGhee-Twilley invokes the understanding that a "case remains live," even after settlement, when "issues outside of those that were settled have not become moot." *Garton*, 2024 WL 3569520, at *4 (citing *Dana Corp.*, 697 F.2d at 721). This narrow exception negates post-settlement mootness, however, only when the still-live "issues" affect a party's right to a still-contested legal remedy. *Id.*; *see also Dana Corp.*, 697 F.2d at 721. Case law demonstrates the exception's limited scope. Take, for example, *Powell v. McCormack*, 395 U.S. 486 (1969), where Congressman Adam Clayton Powell sued over his removal from the House of Representatives.

11

No. 24-5707, *McGhee-Twilley v. CoreCivic of Tenn., LLC*

After the Supreme Court granted certiorari, the House relented and gave him back his seat. *Id.* at 492–94. Although this action mooted Powell's claim for injunctive relief, it did not render his entire suit moot due to the "remain[ing] viab[ility]" of his separate "claim for back salary." *Id.* at 496. Another seminal case in this line, *University of Texas v. Camenisch*, 451 U.S. 390 (1981), follows the same pattern. In district court, the student plaintiff received a preliminary injunction requiring his university to pay for a sign-language interpreter. *Id.* at 393. By the time the case reached the Supreme Court, however, the student had graduated, thus mooting the preliminary injunction issue. *Id.* Yet that development did not moot "the case as a whole" because "it remain[ed] to be decided who should ultimately bear the cost of the interpreter." *Id.* As in *Powell*, this still-live, independent claim for monetary relief meant that the "case as a whole remain[ed] alive." *Id.* at 394; *see also Int'l Union, UAW v. LaSalle Mach. Tool, Inc.*, 696 F.2d 452, 458–59 (6th Cir. 1982) (holding that case was not moot, even though arbitration mooted a preliminary injunction, because the enjoined party retained the right to be compensated for "any loss, expense or damage" caused by the injunction if the court determined the injunction was entered improperly).

But where no such separate, live, tangible issue remains to be resolved, the case as a whole is moot. Mere disagreement between the parties is not tantamount to a live dispute if the conflict affects no one's ability to receive concrete legal relief. *See, e.g.*, *Dana Corp.*, 697 F.2d at 721–22 (case was moot despite lingering party conflicts because "[n]o issue of damages remain[ed]" after the parties "foreswor[e] all rights to recover"). That describes today's case. No claims tied to any sort of legal remedy survived the settlement. Thus, neither did any "issues" sufficient to fend off mootness. *Id.* at 721. Accordingly, McGhee-Twilley's confidentiality dispute with Lawson and TDOC falls outside the exception she invokes.

12

No. 24-5707, *McGhee-Twilley v. CoreCivic of Tenn., LLC*

      4. McGhee-Twilley embraces another purported distinction between this case and *Garton*. There, the parties opposing disclosure were the same parties that settled with the plaintiff, whereas here, CoreCivic—not Lawson or TDOC (those who oppose disclosure)—was the settling party. *See Garton*, 2024 WL 3569520, at *1. Why does this matter? "[U]nlike the plaintiff in *Garton*," McGhee-Twilley contends, she did not "bargain[] away any legally cognizable interest involving [Lawson or TDOC]." Appellant's Reply Br. 11, ECF No. 18 (citation modified). But this argument, in essence, assumes what it sets out to prove—that McGhee-Twilley had a legally cognizable interest involving Lawson's and TDOC's documents outside of using them to prove her now-settled claims. Again, she does not.

      In effect, McGhee-Twilley frames *Garton*'s mootness holding as contract-based rather than constitutional. Not so. The settling parties in *Garton*, it bears emphasizing, never reached an agreement over their discovery dispute. *Garton*, 2024 WL 3569520, at *4. Yet following settlement, that underlying disagreement was mooted along with the rest of the case because Garton could not "demonstrate a legally cognizable interest in the dispute" over the protective order:

> Whether the Release contemplated the inclusion of the protective order, however, is not dispositive; the parties' failure to expressly identify the protective order ruling as part of the Release does not excuse Garton from the responsibility to demonstrate a legally cognizable interest in the dispute. Indeed, Garton makes no effort to explain what legal interest he retains in the protective order ruling now that he has . . . dismissed . . . all claims . . . .

*Id.* In other words, the settlement rendered *Garton* moot not because it revealed a meeting of the minds over the protective order issue, but because, by settling, Garton "bargain[ed] away any legally cognizable interest *in the litigation's outcome*"—and, in doing so, any interest in the "earlier adjudicated" discovery "motion." *Id.* (emphasis added) (citation modified).

13

No. 24-5707, *McGhee-Twilley v. CoreCivic of Tenn., LLC*

*Pettrey v. Enterprise Title Agency, Inc.*, 584 F.3d 701 (6th Cir. 2009), further confirms the point. In *Pettrey*, the parties' settlement explicitly purported to reserve for appeal the issue the plaintiffs presented to us. *Id.* at 703. Yet that arrangement did not revive an otherwise moot case. *Id.* There too, the plaintiffs' relinquishment of their claims left them no "personal stake" in disputing the unresolved issue; "there [wa]s nothing left for the plaintiffs to win." *Id.*

So too here. As in *Garton* and *Pettrey*, that McGhee-Twilley did not resolve the discovery issues with Lawson and TDOC does not matter for mootness purposes. The only "personal stake[s]" affected by our answers to these questions—McGhee-Twilley's claims against CoreCivic—*have* been bargained away. *Id.* As a result, there is "nothing left for [McGhee-Twilley] to win," even if we sided with her. *Id.*

5. Finally, McGhee-Twilley sees an "actual controversy" in the protective order's continued effects and the district court's continued power to enforce it. *Campbell-Ewald Co.*, 577 U.S. at 160 (citation omitted). But *Garton* brushed aside this same reasoning as an insufficient basis for avoiding mootness. As we explained there, the protective order's ongoing force was not relevant unless "the parties demonstrated live stakes in the issue." *Garton*, 2024 WL 3569520, at *4. Here too, neither the prospect of the district court modifying or enforcing the order nor that of McGhee-Twilley incurring contempt sanctions by disregarding it gives her an Article III interest in reopening discovery issues in a dispute that no longer exists.

* * * * *

We dismiss the appeal as moot.

No. 24-5707, *McGhee-Twilley v. CoreCivic of Tenn., LLC*

**CLAY, Circuit Judge, concurring in part.** Plaintiff Lakenya McGhee-Twilley seeks to challenge the confidentiality designations of documents produced by third parties in her lawsuit, which alleged causes of action stemming from the murder of her son in a private prison facility operated by Defendant CoreCivic of Tennessee, LLC. The third parties designated those documents as "confidential," consistent with the procedures outlined in a protective order entered by the magistrate judge below pursuant to Rule 26 of the Federal Rules of Civil Procedure. Such orders may "limit[] the use or disclosure of discovery materials upon a mere showing of 'good cause,'" and "allow the parties to determine in the first instance whether particular materials fall within the order's protection." *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) (quoting Fed. R. Civ. P. 26(c)(1)). It is not at all clear in the instant case whether an adequate showing of good cause was actually made.

Following her challenge of the confidentiality designations in the district court, McGhee-Twilley stipulated to the dismissal of her case after reaching a settlement agreement with Defendants. Prior to and following the parties entering into the settlement agreement, the district court failed to address McGhee-Twilley's attempts to challenge the third parties' disputed confidentiality designations. On appeal, McGhee-Twilley continues her requests to challenge the confidentiality designations of the documents on the basis that she intends to use the documents to support a Department of Justice investigation and to allow her to "keep a watchful eye on the workings of public agencies" and "participate more effectively in the process of overseeing" CoreCivic and third-party Tennessee Department of Corrections. Appellant's Br., ECF No. 13, 40 (internal quotation marks omitted). She also challenges the district court's failure to rule on her request to discontinue the confidentiality designation of records, which arguably constitutes an inappropriate sealing of records by the court without adequate justification. The majority would

15

No. 24-5707, *McGhee-Twilley v. CoreCivic of Tenn., LLC*

have us believe that McGhee-Twilley's intentions, while noble, do not constitute "a personal stake—i.e., a legally cognizable interest—in the outcome of the litigation." *Pettrey v. Enter. Title Agency, Inc.*, 584 F.3d 701, 703 (6th Cir. 2009).

Concededly, it is not clear that McGhee-Twilley, having settled the underlying case, continues to have a legally sufficient interest in the disclosure of the documents designated "confidential" to insist that the documents not be shielded from public view. However, the district court could perhaps be faulted for leaving the confidentiality designations in effect post-settlement, given the district court's failure to make findings justifying the confidentiality designations, taking into account the public interest that such records ordinarily should not be concealed from public view. *See In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983) ("Only the most compelling reasons can justify non-disclosure of judicial records."). What we are left with is no sufficient explanation regarding the contents or nature of the documents in question, and certainly no court determination regarding the need to maintain such secrecy.

The district court's failure to address or rule upon this matter is, in many ways, contrary to the principles underlying our public records access case law. Chief among those principles, as our Court recently reaffirmed, is that "[t]he public has 'a general right to inspect and copy public records and documents, including judicial records and documents.'" *Grae v. Corr. Corp. of Am.*, 134 F.4th 927, 931 (6th Cir. 2025) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). Consequently, we have rightly recognized that "litigants who assert the violation of their right of access to judicial records stand on strong historical ground." *Grae v. Corr. Corp. of Am.*, 57 F.4th 567, 569 (6th Cir. 2023).

While McGhee-Twilley's arguments concern only documents produced during discovery, as opposed to documents subject to court seal, *see Shane Grp.*, 825 F.3d at 305 (describing the

16

No. 24-5707, *McGhee-Twilley v. CoreCivic of Tenn., LLC*

different confidentiality concerns relating to materials produced during the discovery and adjudicatory stages of litigation), similar considerations of public access apply. Indeed, the confidentiality designation under these circumstances is virtually the same as a court seal of documents. And although it is not clear that a litigant in McGhee-Twilley's position may assert a legally cognizable interest sufficient to attain the relief she seeks, hopefully the majority opinion will not be read to foreclose a different result in a future case where the facts are developed or presented in such a way that the arguments of the party seeking disclosure are not foreclosed without the court addressing the merits of the party's arguments. That being said, I concur in part in the judgment.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 24-5707

LAKENYA MCGHEE-TWILLEY, individually and as next-of-kin of Marktavious Twilley, deceased,

    Plaintiff - Appellant,

v.

CORECIVIC OF TENNESSEE, INC., et al.,

    Defendants,

JASON LAWSON; TENNESSEE DEPARTMENT OF CORRECTION,

    Movants - Appellees.

**FILED**
Jun 09, 2025
KELLY L. STEPHENS, Clerk

Before: CLAY, READLER, and DAVIS, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the appeal is DISMISSED AS MOOT.

**ENTERED BY ORDER OF THE COURT**

Kelly L. Stephens, Clerk